**Rodney ZEGER and Stacey Zeger, h/w, Plaintiffs,**

v.

**JOSEPH RHODES, LTD., Defendant.**

**No. 3:CV–91–916.**

United States District Court, M.D. Pennsylvania.

Sept. 24, 1991.

818

Carleton G. Goodnow, McVan & Eslinger, Glenside, Pa., for plaintiffs.

Peter Samson and Edward J. Cermanski, White and Williams, Philadelphia, Pa., for defendant.

## MEMORANDUM

McCLURE, District Judge.

### I.  PROCEDURAL HISTORY

Plaintiffs initially filed the instant action in the Philadelphia Court of Common Pleas on January 4, 1991, seeking damages for injuries allegedly sustained during plaintiff Rodney Zeger's operation of a sheet metal bending machine manufactured by defendant Joseph Rhodes, Ltd. ("Rhodes"). On May 10, 1991, Rhodes removed the action to the United States District Court for the Eastern District of Pennsylvania. Subsequently, on June 12, 1991, the action was transferred to this Court.

On July 25, 1991, Rhodes filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), contending that its contacts with this forum are insufficient to permit the exercise of in personam jurisdiction over it in the Commonwealth of Pennsylvania.[1]

### II.  STATEMENT OF FACTS

On the basis of information provided by the parties for the purpose of deciding the jurisdictional issue [2], the court finds the following facts.

Rhodes, which is primarily engaged in the business of manufacturing and selling metal forming machinery, is a company organized and existing under the laws of England with its principal place of business and registered office located at Belle Vue, Wakefield, England. The machine which allegedly caused plaintiff's injuries was manufactured by Rhodes and provided to plaintiff Rodney Zeger's employer as a demonstration model.

Rhodes is the proprietor of an invention entitled "Bending Machine" for which it received a United States patent on April 20, 1987 under Patent No. 4658624. In February 1989, Teledyne initiated negotiations with Rhodes in the hope of securing an exclusive license to manufacture and distribute the Bending Machine in North America. On two occasions Charles Ian Ridgeway, Managing Director and owner of Rhodes, visited Teledyne's Connecticut office for the purpose of negotiations. All other negotiations took place in England and the resulting agreement provides for the application of English law.

The agreement, entered into on May 20, 1988, grants Teledyne the exclusive license to manufacture, market and distribute Rhodes' Bending Machines throughout Canada, the United States and Mexico. The agreement does not provide for the sale or distribution by Teledyne of Bending Machines manufactured by Rhodes. As part of the agreement, Rhodes was to provide Teledyne with a Bending Machine for use as a demonstrator and as a model to assist in the manufacturing process. The agreement provided for delivery of a machine to Teledyne Landis Machine Co.

---

1. Subsequent to the filing of Rhodes' reply brief on this matter plaintiffs filed a memorandum of law in response to the reply brief without seeking leave of court as required by Local Rule 401.7. Consequently, for the purposes of resolving this motion, matters raised by the plaintiffs in this unsanctioned memorandum will not be considered by the court.

2. Rhodes, in support of its motion, submitted the affidavit of Charles Ian Ridgeway, managing director and owner of Rhodes. Both parties have submitted copies of a licensing agreement between Rhodes and Teledyne Industries, Inc. ("Teledyne") along with information concerning the purchase of a Rhodes Cuboid Metal Bending Machine by Teledyne from Rhodes.

("Teledyne Landis"), a Teledyne-related corporation located in Waynesboro, Pennsylvania. Although, at the direction of Teledyne, the machine was actually shipped to Chicago for a trade show, it was eventually shipped to Teledyne Landis in Waynesboro. Subsequently, a second machine was sold to Teledyne and shipped directly to Teledyne Landis in Pennsylvania. Teledyne took possession of both machines in England and paid their shipping costs. However, paragraph 14 of the Conditions of Sale provides:

> Property of Goods: The property in the Goods shall not pass to the Customer and the Customer shall keep the Goods as bailee and trustee for the Company (returning the same to the Company upon request) until the price of the Goods shall have been wholly paid and until any other sums whatsoever which are due from the Customer to the Company whether under this contract or howsoever otherwise shall have been paid in full without any reduction or deferment on account of any dispute or cross-claims whatsoever.

The purchase order indicates that upon departure from England ten percent of the purchase price had not yet been paid, and was not payable until the machine was operating at Teledyne Landis in Pennsylvania.

Paragraph 3 of the agreement provides that "Rhodes will deliver to Teledyne at 5th and Church Streets Waynesboro, Pennsylvania" one set of copyright material and subsequent copyright material on request. Paragraph 4(i) states that Rhodes will provide instruction and explanation to Teledyne personnel in Pennsylvania concerning the manufacture, assembly and use of the Bending Machines. In accordance with this paragraph, on one occasion an employee of Rhodes was sent to Teledyne Landis in Pennsylvania to demonstrate the operation of the Bending Machine.

In March 1989, plaintiff Ronald Zeger, an employee of Teledyne Landis, was injured while operating one of the Bending Machines sold to Teledyne by Rhodes.

## III. DISCUSSION

The central concern of a jurisdictional inquiry is the relationship among the defendant, the forum and the litigation. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293 (3d Cir.1985), citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Rule 4(e) of the Federal Rules of Civil Procedure permits a federal district court to exercise personal jurisdiction to the extent allowed by the long-arm statute of the state in which the court sits. Pennsylvania's long-arm statute extends its reach as far as federal due process standards permit. 42 Pa.Cons.Stat.Ann. § 5322(b).

The Due Process Clause forbids a court from exercising personal jurisdiction over a defendant under circumstances that offend "traditional notions of fair play and substantial justice". *International Shoe Co. v. Washington, supra,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. 95, quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). Therefore, it must be determined whether Rhodes has sufficient minimum contacts with Pennsylvania to the extent that maintenance of the suit will not offend "traditional notions of fair play and substantial justice".

The minimum contacts required must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws". *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

As stated by the United States Supreme Court in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980):

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* 444 U.S. at 297, 100 S.Ct. at 567.

Personal jurisdiction may be asserted over a non-resident defendant in ei-

ther one of two situations. The first situation occurs when the defendant's contacts with the forum state are "continuous and substantial". This is known as general jurisdiction and may be asserted regardless of the relationship between the cause of action and the defendant's contacts with the forum state. The second situation occurs when the cause of action is related to or arises out of the defendant's contacts with the forum state. This is known as specific jurisdiction, and may be asserted when the defendant's contacts with the forum state are not "continuous and substantial". See *Dollar Savings Bank v. First Security Bank of Utah*, 746 F.2d 208, 211 (3d Cir.1984). Since it is clear that Rhodes' contacts with Pennsylvania are not "continuous and substantial", Rhodes could only be within the personal jurisdiction of this court on the basis of specific jurisdiction.

Plaintiffs base their argument in favor of jurisdiction on the "stream of commerce" theory which evolved from the above-quoted language in *World–Wide Volkswagen*. See *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Max Daetwyler Corp. v. Meyer, supra; Rockwell Int'l Corp. v. Costruzioni Aeronautiche*, 553 F.Supp. 328 (E.D.Pa.1982). Under this theory, if Rhodes is within the court's jurisdiction it would be because it participated in a distributive chain which might reasonably anticipate sales in Pennsylvania.

■ Unfortunately, the "stream of commerce" theory as argued by plaintiffs is inapplicable to the instant case. Stream of commerce cases typically involve an injury allegedly caused by a product or part manufactured by a non-resident defendant and placed into the stream of commerce without knowledge of its eventual destination. That is, although the manufacturer may know that its product or part is likely to find its way to certain locations, the manufacturer merely creates the product, and then places it in the stream of commerce, with no control over where the flow of

commerce will take the product. See *Asahi Metal Industry Co. v. Superior Court, supra*, 480 U.S. at 112, 107 S.Ct. at 1032, 94 L.Ed.2d at 104 (plurality opinion) (placement of a product in the stream of commerce, without more, is not an act of the defendant purposefully directed at the forum state).

■ Plaintiffs argue this motion as if plaintiff Rodney Zeger were injured by a machine manufactured by Teledyne under the licensing agreement. That simply is not the case. Plaintiff was injured while using one of the two machines sold to Teledyne by Rhodes for use as demonstrator or manufacturing models. These are the only two Bending Machines ever sold by Rhodes in the United States.[3] Significantly, Rhodes sold the machines directly to Teledyne and was well-aware of the fact that they would be used at Teledyne Landis in Waynesboro, Pennsylvania. Consequently, this case presents a garden-variety question of specific jurisdiction, and does not concern a novel question of jurisdiction involving the stream of commerce theory.

■ Rhodes contends that, although it knew the destination of the machines, this alone is insufficient to permit this court to maintain personal jurisdiction over it. Rhodes cites *Jacobs v. Lakewood Aircraft Service, Inc.*, 493 F.Supp. 46 (E.D.Pa.1980) and *Dommel's Hotel, Inc. v. East West Helicopter, Inc.*, 580 F.Supp. 15 (E.D.Pa. 1984), in support of this proposition. The court agrees with the proposition. However, unlike the cases cited, Rhodes' conduct amounts to more than mere knowledge that its product was to be used by the purchaser in the forum state. Rhodes agreed to deliver to Teledyne Landis in Pennsylvania one set of copyright material relating to the machine and additional copyright material on request. Rhodes also agreed to provide instruction to Teledyne employees in Pennsylvania involving the manufacture, assembly and use of the Bending Machines. In addition, Rhodes dispatched an employee to Teledyne Landis

---

**3.** In fact, Rhodes claims it has never manufactured or distributed any products in the United States.

in Pennsylvania to demonstrate the operation of the Bending Machine. All of this activity by Rhodes relates to the Bending Machine which allegedly caused plaintiffs' injuries and constitutes much more than mere knowledge that the machine would eventually find its way to Pennsylvania.

Under these circumstances, the exercise of personal jurisdiction over Rhodes does not offend "traditional notions of fair play and substantial justice". Rhodes' conduct and connection with the forum state are such that Rhodes should have reasonably anticipated being haled into court in Pennsylvania for a suit involving the operation of one of the machines sold to Teledyne for use as a demonstrator or manufacturing model. As stated earlier, the central concern of a jurisdictional inquiry is the relationship among the defendant, the forum and the litigation. That is, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Industry Co. v. Superior Court, supra*, 480 U.S. at 113, 107 S.Ct. at 1034, 94 L.Ed.2d at 105. While the burden on Rhodes in defending this suit in Pennsylvania would be severe,[4] the interests of Pennsylvania in protecting its citizens and the interests of plaintiffs in obtaining relief for their injuries may well go unsatisfied if this case is dismissed on jurisdictional grounds. Accordingly, defendant's motion will be denied.

---

**4.** "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Co. v. Superior Court, supra*, 480 U.S. at 114, 107 S.Ct. at 1034, 94 L.Ed.2d at 105.