J-A10040-20

2020 PA Super 166

| | | |
|---|---|---|
| JUAN FULANO AND JUANA FULANO, et al., | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| FANJUL CORPORATION, ALCOHOLES FINOS DOMINICANOS, BIESTERFELD INTERNATIONAL GMBH AND BIESTERFELD U.S., INC., DREXEL CHEMICAL COMPANY, INICIA GROUP, UPL LIMITED | : | No. 3291 EDA 2018 |

Appeal from the Order Dated October 22, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  January Term, 2018, No. 02241

BEFORE:  BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:                    **FILED JULY 10, 2020**

This is an appeal from the orders of the Court of Common Pleas of

Philadelphia County (trial court) sustaining the preliminary objections filed by

Fanjul Corp. (Fanjul), Drexel Chemical Company (Drexel), Inicia Ltd. (Inicia)

and UPL Limited (UPL) (collectively, "Defendants").[1]  Appellants (Plaintiffs) are

Dominican agricultural workers who filed a civil action alleging that they

suffered adverse health effects through exposure to toxic pesticides while

working in the Dominican Republic.  The trial court determined that none of

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Fanjul and Inicia were, respectively, incorrectly named in the complaint as
Fanjul Corporation and Inicia Group.

the Defendants, all foreign corporations, were subject to personal jurisdiction in Pennsylvania. After review, we affirm.

**I.**

We first briefly summarize Plaintiffs' civil action. On January 15, 2018, Plaintiffs filed a thirteen-count complaint in the trial court against six defendants. Plaintiffs are a group of forty-one Dominican residents claiming that they were exposed to toxic pesticides and herbicides while working as fumigators in the sugar cane industry in the Dominican Republic.[2] Through this exposure, Plaintiffs suffered, among other health effects, eye and skin irritation, headaches, difficulty breathing, chest and stomach pain, nausea and chronic coughing. Plaintiffs averred that they were injured while working for subsidiaries of Fanjul (a Florida corporation) and Inicia (a British Virgin Islands corporation),[3] and that the pesticides were produced by Drexel (a Tennessee corporation) and UPL (an Indian corporation).[4] In total, Plaintiffs raised six

---

[2] Plaintiffs are identified in the complaint by the pseudonym "Juan Fulano." The sole female plaintiff "Juana Fulano" was not a fumigator but worked in the sugar cane fields after they had been fumigated.

[3] Of the forty-one Plaintiffs, thirty of them alleged that they worked for a subsidiary of Fanjul, Central Romana Corporation, Ltd., while seven alleged that they worked for Grupo Vicini, a predecessor of Inicia.

[4] The other two co-defendants, Alcoholes Finos Domincanos and Biesterfeld International GmbH, are not parties to this this appeal.

common law causes of action sounding in tort; one count for violation of International Law; and six causes of action for violations of Dominican Law.

Because Defendants were nonresident corporations, regarding jurisdiction, Plaintiffs generally averred that:

> Th[e] [Trial] Court has personal jurisdiction over Defendants under the Pennsylvania Long-Arm Statute, 42 Pa.C.S.A. § 5322, because, *inter alia*, Defendants transact business throughout the United States, including in Pennsylvania and in this judicial district. In addition, as set forth herein, Defendants maintain sufficient contacts with [Pennsylvania] such that this Court's exercise of personal jurisdiction over them does not offend traditional notions of fair play and substantial justice.

Plaintiffs' Complaint, 1/15/18, at Paragraph 97.

Plaintiffs asserted a "stream of commerce" theory for personal jurisdiction over Fanjul and Inicia, alleging that both controlled "sugar empires" through their various subsidiaries that produce and distribute sugar throughout the United States, including Pennsylvania. As for the pesticide producers, Plaintiffs averred that Drexel registers and sells its products in Pennsylvania while UPL has an in-state alter ego subsidiary, United Phosphorus, Inc. (UPI), based in Montgomery County.

Defendants all filed preliminary objections under Pa.R.C.P. 1028(a)(1) for lack of personal jurisdiction and included supporting affidavits that they had insufficient contacts—if any at all—with Pennsylvania to permit either general or specific personal jurisdiction. Plaintiffs responded by requesting

the trial court to allow jurisdictional discovery under Pa.R.C.P. 1028(c)(2).[5]

After the trial court entered 30-day orders for the parties to conduct discovery, Plaintiffs served interrogatories, document requests and deposition notices on Defendants. While Defendants objected to some of the document requests, each produced a corporate-designee to be deposed about their respective corporation's contacts with Pennsylvania.

After holding two hearings for argument, the trial court entered separate orders dismissing all claims against Drexel, Inicia and UPL.[6] The trial court, however, deferred ruling on Fanjul's preliminary objections in order to allow Plaintiffs to conduct additional jurisdictional discovery. After Fanjul produced their corporate-designee for a second deposition, the trial court entered an October 22, 2018 order sustaining Fanjul's preliminary objections and dismissing all claims against it with prejudice. Because Fanjul was the final remaining defendant, Plaintiffs filed their notice of appeal and asserted in their

---

[5] Rule 1028(c)(2) provides: "The court shall determine promptly all preliminary objections. If an issue of fact is raised, the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2).

[6] The dates of the orders were July 17, 2018 (Drexel), August 3, 2018 (Inicia) and August 6, 2018 (UPL).

court-ordered Rule 1925(b) statement that the trial court erred in finding that it lacked personal jurisdiction over Defendants.[7]

## II.

Before addressing Plaintiffs' personal jurisdiction challenges, we must first address whether this appeal should be quashed, as both Drexel and UPL have raised several arguments that Plaintiffs violated the Rules of Appellate Procedure.[8]

## A.

Drexel and UPL first argue that this appeal should be quashed because Plaintiffs did not file notices of appeal from the separate orders sustaining their preliminary objections. Rule of Appellate Procedure 341 defines a "final order" as, among other things, any order that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1). Because several co-defendants were still in the case when the trial court dismissed Drexel and UPL, neither order sustaining their preliminary objections was final and appealable. *See K.H. v. J.R.*, 826 A.2d 863, 869 (Pa. 2003) ("[I]n an action involving multiple

---

[7] Plaintiffs also asserted that the trial court should have allowed additional jurisdictional discovery concerning Fanjul and Inicia. We address these claims in each defendant's respective section.

[8] Drexel and UPL raised these arguments in a joint motion to quash, and Inicia raised similar arguments in a motion to dismiss. We denied the motions without prejudice to them being raised again in their briefs. Inicia now adopts by reference Drexel's arguments under Pa.R.A.P. 2137. Fanjul raises no procedural arguments in their brief.

defendants, and in the absence of an express determination by the trial court under [Pa.R.A.P.] 341(c), an order granting summary judgment as to one party is treated as appealable as of right only after the disposition of the claims involving the remaining parties."). Plaintiffs thus correctly waited to file their appeal until the final remaining defendant Fanjul was dismissed.

Drexel and UPL also argue that Plaintiffs' notice of appeal incorrectly listed only the trial court's October 22, 2018 order dismissing Fanjul rather than listing all of the trial court's orders dismissing the other Defendants. However, "in the circumstance where each of the defendants in a single action is dismissed prior to trial, an appeal from the order dismissing the remaining claim or party is sufficient to bring for review the earlier issued orders." *K.H.*, 826 A.2d at 871 (citation omitted). "Any concern as to the intended scope of the appeal may be addressed through the filing of a statement of matters complained of on appeal pursuant to Appellate Procedural Rule 1925(b)." *Id*. Plaintiffs stated in their Rule 1925(b) statement that they were challenging the orders dismissing Defendants and attached each order that they now seek to challenge. Any ambiguity as to the scope of the appeal was clarified through the Rule 1925(b) statement. We therefore find no error.

**B.**

Drexel and UPL next argue that Plaintiffs waived their challenges by filing a vague, imprecise Rule 1925(b) statement. Plaintiffs' statement read, in relevant part:

> 1. The trial court abused its discretion and committed an error of law in sustaining Drexel's Preliminary Objections to the Complaint and dismissing Drexel as a defendant for want of personal jurisdiction.
>
> 2. The trial court abused its discretion and committed an error of law in sustaining Inicia's Preliminary Objections to the Complaint and dismissing the claims asserted against Inicia with prejudice.
>
> * * *
>
> 4. The trial court abused its discretion and committed an error of law in sustaining UPL's Preliminary Objections to the Complaint and dismissing the Complaint as to UPL.

Plaintiffs' Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 11/29/18, at 2.

"The [Rule 1925(b)] Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). "[T]he [Rule] 1925(b) statement must be sufficiently 'concise' and 'coherent' such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith." *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1038 (Pa. Super. 2018). "[A] Rule 1925(b) statement is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the party plans to raise on appeal." *Id*. (citing *Riley v. Foley*, 783 A.2d 807, 813 (Pa. Super. 2001). "[W]hen issues are too vague for the trial court to identify and address, that is the functional equivalent of no concise statement at all." *Commonwealth v. Smith*, 955 A.2d 391, 393 (Pa. Super. 2008) (citing *Commonwealth v.*

*Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001)). "When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa. Super. 2002) (citing *Dowling*, 778 A.2d at 686).

First, Plaintiffs specifically identified the issue of personal jurisdiction as to Drexel, and the trial court explained its reasoning for finding that it lacked jurisdiction over Drexel in its Rule 1925(a) opinion, expressing no confusion as to Plaintiffs' challenge. *See* Trial Court Opinion (T.C.O.), 1/14/19, at 8-10. In this regard, Drexel does not argue that the trial court's analysis is either lacking or insufficient in any manner as a result of Plaintiffs' Rule 1925(b) statement. Moreover, Rule of Appellate Procedure 1925(b)(4)(v) provides, in relevant part, "[e]ach error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court[.]" Pa.R.A.P. 1925(b)(4)(v). Accordingly, we find no waiver as to Drexel. *See Smith*, 955 A.2d at 393 (no waiver where trial court meaningfully addressed issues despite vague Rule 1925(b) statement).

In contrast, Plaintiffs did not identify the issue of personal jurisdiction as to Inicia and UPL in the Rule 1925(b) statement. We note that the trial court issued one-paragraph orders sustaining Defendants' preliminary objections but did not include its reasoning. This Court has explained:

> When the reasons for a trial court's ruling are vague or not discernable from the record, then an appellant may be *forced* to file a vague Rule 1925(b) statement, and it would be unjust to consider such filing a violation of the Rule. Just as the trial judge

cannot be made to guess what an appellant is complaining of on appeal, an appellant cannot be made to guess what the trial judge is thinking in his or her ruling. Therefore, under these limited circumstances where the appellant is unable to ascertain the trial court's rationale for the ruling under appeal, it is not appropriate to find waiver or to dismiss the appeal based on a vague Rule 1925(b) statement.

*Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 803-04 (Pa. Super. 2007) (internal citations and quotation marks omitted).

However, "[i]f the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms. In such a case, the generality of the Statement will not be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(vi).

Though Plaintiffs did not preface their Rule 1925(b) statement explaining why it generally identified the errors, we decline to find that this omission **warrants quashing the appeal**. Like Drexel, the trial court discerned that Plaintiffs were contesting personal jurisdiction over Inicia and UPL, especially since that was the primary issue litigated through their preliminary objections. *See* T.C.O. at 11-16. Further, our research reveals no case law from this Court that failure to comply with Rule 1925(b)(4)(vi) results in waiver, nor does Drexel or UPL attempt to make the argument that we should adopt such a rule based on analogous violations of the Rules of Appellate Procedure. Accordingly, we find no waiver based on Plaintiffs' Rule 1925(b) statement.

**C.**

Drexel and UPL next allege that Plaintiffs' counsel failed to serve them with either the notice of appeal or the Rule 1925(b) statement. Based on our review of the record, counsel filed both electronically under the belief that doing so would result in all parties being served. As Defendants point out, under our Rules of Appellate Procedure, appellants must concurrently serve their notice of appeal and Rule 1925(b) statement on all parties.[9]

Nevertheless, despite Plaintiffs' apparent error, we are again constrained to find that neither quashing nor remanding this matter is necessary. First, regarding the failure to serve the notice of appeal on Defendants, Rule of Appellate Procedure 902 provides as follows:

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

Pa.R.A.P. 902.

---

[9] Rule of Appellate Procedure 906 specifically requires that the appellant, concurrent with filing their notice of appeal, shall serve copies on "[a]ll parties to the matter in the trial court, including parties previously dismissed pursuant to an interlocutory order[.]" Pa.R.A.P. 906(a)(1). Rule of Appellate Procedure 1925 provides, in relevant part, that service of the Rule 1925(b) statement on the parties "shall be concurrent with filing and shall be by any means of service specified under Pa.R.A.P. 121(c)." Pa.R.A.P. 1925(b)(1).

As noted before, the trial court filed a Rule 1925(a) opinion with its reasoning for sustaining the preliminary objections, and all Defendants have fully briefed their respective positions on appeal. As a result, Plaintiffs' error has not hindered meaningful appellate review. *See **Coffman v. Kline***, 167 A.3d 772, 776 (Pa. Super. 2017) ("Where a party's procedural missteps do not affect the validity of the appeal, remand is not required."). Additionally, Drexel and UPL do not cite any case law from this Court for the proposition that failure to serve a Rule 1925(b) statement requires an appeal to be quashed; nor does either party develop an argument for why we should establish such a rule through this case based on analogous case law. In the absence of either, we decline to quash based on Plaintiffs' service errors.

**D.**

Finally, Drexel and UPL allege that Plaintiffs violated several Rules of Appellate Procedure in filing and serving their reproduced record. These violations include: (1) failure to timely file or serve their reproduced record concurrently with their brief; (2) failure to file or serve a designation of contents of reproduced record, as required by Pa.R.A.P. 2154; and (3) filing incomplete copies with improper pagination.

First, Drexel and UPL are indeed correct that Plaintiffs violated Pa.R.A.P. 2154, which provides, in relevant part:

> [T]he appellant shall not later than 30 days before the date fixed
> by or pursuant to Rule 2185 (service and filing of briefs) for the
> filing of his or her brief, serve and file a designation of the parts

of the record which he or she intends to reproduce and a brief statement of issues which he or she intends to present for review.

Pa.R.A.P. 2154(a).

Despite receiving several extensions to file their merits brief and reproduced record, Plaintiffs never filed a designation of reproduced record in compliance with Rule 2154.[10]  Plaintiffs ultimately filed their brief on the final day to do so (June 7, 2019), but did not concurrently file their reproduced record in accordance with Pa.R.A.P. 2186.[11]  Instead, Plaintiffs electronically filed their reproduced record on June 18, 2019, and neglected to file paper copies with this Court and serve the Defendants as required by Pa.R.A.P. 2187(a).

Having found that Plaintiffs have violated the Rules of Appellate Procedure, we must determine if their violations warrant quashing the appeal. In this regard, Rule of Appellate Procedure 2101 provides:

> Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or

---

[10] After Plaintiffs' deadline for filing a designation of record passed, Defendants filed counter-designations of contents of the reproduced record on April 11, 2019 (Fanjul), April 15, 2019 (Drexel and UPL) and April 16, 2019 (Inicia).

[11] Rule 2186(a)(1) provides: "The reproduced record shall be served and filed not later than … the date of service of the appellant's brief[.]"  Pa.R.A.P. 2186(a)(1).  Appellants are allowed to file the reproduced record beyond that time if they elect to proceed under Pa.R.A.P. 2154(b), which governs large records.  Plaintiffs, however, never gave notice to the trial court that they intended to proceed under that subdivision.

> reproduced record of the appellant and are substantial, the appeal or other matter **may be** quashed or dismissed.

Pa.R.A.P. 2101 (emphasis added).

Similarly, Rule of Appellate Procedure 2188 states:

> If an appellant fails to file his designation of reproduced record, brief or any required reproduced record within the time prescribed by these rules, or within the time as extended, an appellee may move for dismissal of the matter.

Pa.R.A.P. 2188.

"Compliance with the Pennsylvania Rules of Appellate Procedure 2152-2154 regarding contents of reproduced records on appeal is mandatory, not directory." *Rosselli v. Rosselli*, 750 A.2d 355, 357 (Pa. Super. 2000). This Court will quash an appeal when the appellant's violations substantially impede the appellate process. *Id*. at 359-60 (appeal quashed due to appellant's failure to comply with the Rules of Appellate Procedure regarding reproduced record). However, "when the defects in the reproduced record are not so serious as to preclude our ability to properly evaluate and address the substantive arguments advanced by the parties," then we have declined to quash the appeal. *Hagel v. United Lawn Mower Sales & Service, Inc.*, 653 A.2d 17, 19 (Pa. Super. 1995); *Kern v. Kern*, 892 A.2d 1, 6 (Pa. Super. 2002) ("[T]his Court quashes appeals for failure to conform to the Rules of Appellate Procedure only where the failure to conform to the Rules results in the inability of this Court to discern the issues argued on appeal.") (citation omitted).

Though Plaintiffs failed to comply with the rules for filing its reproduced record, we decline quashing the appeal. Under Rule of Appellate Procedure 2101, even when the defects in the reproduced record are substantial, quashing an appeal is not mandatory. Moreover, as we found in preceding issues, our review of Plaintiffs' challenges is not substantially hampered by the failure to produce a reproduced record conforming to the Rules of Appellate Procedures. We therefore deny Drexel and UPL's arguments for quashing the appeal.

**III.**

Turning to the merits of Plaintiffs' personal jurisdiction challenges, our standard of review is as follows:

> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. When sustaining the trial court's ruling will result in the denial of a claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt, and this Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion.
>
> Moreover, when deciding a motion to dismiss for lack of personal jurisdiction[,] the court must consider the evidence in the light most favorable to the non-moving party. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion. Once the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it.

- 14 -

*Calabro v. Socolofsky*, 206 A.3d 501, 505 (Pa. Super. 2019) (quoting *Sulkava v. Glaston Finland Oy*, 54 A.3d 884, 889 (Pa. Super. 2012)).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits the authority of a state to exercise *in personam* jurisdiction over nonresident defendants. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985). The extent to which the Due Process Clause proscribes jurisdiction depends on the nature and quality of the defendant's contacts with the forum state. *Id.* at 474–76; *Kubik v. Letteri*, 614 A.2d 1110, 1114 (Pa. 1992). Where a defendant "has established no meaningful contacts, ties or relations" with the forum, the Due Process Clause prohibits the exercise of personal jurisdiction. *Burger King*, 471 U.S. at 472. However, where a defendant has "purposefully directed" his activities at the residents of the forum, he is presumed to have "fair warning" that it may be called to suit there. *Id.*

"A defendant's activities in the forum [s]tate may give rise to either specific or general jurisdiction." *Mendel v. Williams*, 53 A.3d 810, 817 (Pa. Super. 2012). Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Vaughn Estate of Vaughn v. Olympus America, Inc.*, 208 A.3d 66, 73 (Pa. Super. 2019) (citation omitted). We have summarized

the three requirements for a forum to exercise specific jurisdiction over a nonresident defendant as follows:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's activities in the forum state. Third, jurisdiction must be fair and reasonable so as not to offend tradition notions of fair play and substantial justice.

*Hammons v. Ethicon*, 190 A.3d 1248, 1262 (Pa. Super. 2018) (citing *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1785 (2017)) (internal quotations and citations omitted).

As we have explained, "[b]ecause due process may permit specific jurisdiction based solely on single or occasional acts purposefully directed at the forum, it is narrow in scope, limiting a cause of action to the extent that it arises out of or relates to the very activity that establishes jurisdiction." *Mendel*, 53 A.3d at 817 (internal quotations omitted).

General Jurisdiction, on the other hand, is established over a nonresident corporation when it: "(1) is incorporated under or qualified as a foreign corporation under the laws of this Commonwealth; (2) consents, to the extent authorized by the consent; or (3) carries on a continuous and systematic part of its general business within this Commonwealth." *Seely v. Caesars Entertainment Corporation*, 206 A.3d 1129, 1133 (Pa. Super. 2019) (citing 42 Pa.C.S. § 5301(a)(2)(i-iii)) (footnotes and emphasis

- 16 -

omitted). In contrast to specific jurisdiction, "[a] court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." **Hammons**, 190 A.3d at 1261 (quoting **Bristol-Myers**, 137 S. Ct. at 1780).

Beginning with **Goodyear Dunlop Tire Operations, S.A. v. Brown**, 564 U.S. 915 (2011), the United States Supreme Court has limited states' ability to subject corporations to general jurisdiction. A court will have general personal jurisdiction over a foreign corporation only when its affiliations with the state are so "continuous and systematic" as to render them essentially at home in the forum state. **Id.** at 919. In **Daimler AG v. Bauman**, 571 U.S. 117 (2014), the Supreme Court clarified that the "paradigm" forums in which a corporate defendant would be "at home" are that corporation's place of incorporation and its principal place of business. **Id**. at 137. However, as will be discussed in relation to Drexel, the **Daimler** Court stated that in an "exceptional case" a corporate defendant's operations in a forum outside of its state of incorporation or principal place of business "may be so substantial and of such a nature as to render the corporation at home in that [s]tate." **Id**. at 139 n.19.

**IV.**

**A.**

Plaintiffs first challenge that the trial court lacked specific personal jurisdiction over Fanjul.[12]  Plaintiffs contend here, as they did in their complaint, that Fanjul controls a "sugar empire" through its various alter ego subsidiaries.[13]  Plaintiffs devote a large part of their brief on the interconnectedness of Fanjul and these entities, arguing that Fanjul is so intertwined with them that their corporate forms may be disregarded. Plaintiffs contend that Fanjul, through these entities, places "its products into the stream of commerce with sufficient intentionality so as to be subject to personal jurisdiction in Pennsylvania."  Plaintiffs' Brief at 38.  According to Plaintiffs, this establishes specific personal jurisdiction under Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322(a).  Fanjul counters that Plaintiffs have never alleged any connection between their claims and Pennsylvania to support specific personal jurisdiction.  As a result, Fanjul contends, any alter

---

[12] The trial court also found that it lacked general personal jurisdiction over Fanjul because neither Fanjul nor its subsidiaries were incorporated in Pennsylvania or had their principal place of business here.  T.C.O. at 18. Plaintiffs do not challenge this determination.

[13] The alleged alter egos include the previously-mentioned Central Romana Corporation, Ltd., American Sugar Refining, Inc., ASR Group International, Inc. and Domino Foods, Inc.  None of these entities are incorporated or have their principal place of business in Pennsylvania.

ego analysis of its subsidiaries is unnecessary because Plaintiffs' claims are not connected to Pennsylvania.

We agree with Fanjul that we need not undertake any alter ego analysis of Fanjul and its subsidiaries. Plaintiffs are Dominican residents claiming that they were injured in the Dominican Republic by products that were neither developed nor made in Pennsylvania. To invoke specific personal jurisdiction, a plaintiff's claims must "arise out of or relate to" the defendant's activities in the forum state. **Hammons**, 190 A.3d at 1262. This is reflected in Pennsylvania's long-arm statute, which gives courts personal jurisdiction over defendants or their agents "as to a cause of action or other matter **arising**" from specified particular types of contact with Pennsylvania. 42 Pa.C.S. § 5322(a) (emphasis added). Plaintiffs have never alleged that their claims arise from any contacts Fanjul or any of its subsidiaries have with Pennsylvania. As a result of failing to so allege, Plaintiffs cannot establish specific personal jurisdiction.

Plaintiffs nevertheless argue that Fanjul is subject to specific personal jurisdiction because it has placed sugar into the "stream of commerce," including in Pennsylvania. However, "[s]tream of commerce cases typically involve an injury allegedly caused by a product or part manufactured by a nonresident defendant and placed into the stream of commerce without knowledge of its eventual destination." **Zeger v. Joseph Rhodes, Ltd.**, 775 F. Supp. 817, 820 (M.D. Pa. 1991). Because Plaintiffs do not allege that they

were injured in Pennsylvania by a product produced by Fanjul, their effort to invoke "stream of commerce" for specific personal jurisdiction is unavailing.

Recognizing this deficiency, Plaintiffs urge this Court to expand the "stream of commerce" theory for specific personal jurisdiction. Plaintiffs' Reply Brief at 2-3. We decline to do so. Plaintiffs' proposed expansion would effectively subject defendants to specific personal jurisdiction in any forum in which it distributes a product, regardless of there being any connection between the defendant's forum contacts and the plaintiff's claims. Accordingly, the trial court correctly found that it lacked specific personal jurisdiction over Fanjul.[14]

**B.**

Plaintiffs next challenge the trial court's determination that it lacked personal jurisdiction over Inicia. As they did with Fanjul, Plaintiffs allege that

---

[14] Plaintiffs also claim that the trial court should have compelled Fanjul to produce certain documents and witnesses after it deferred ruling on Fanjul's preliminary objections. However, there was no need for further discovery because the issue raised by the preliminary objections was whether the allegations in the complaint were legally sufficient to support specific personal jurisdiction. Plaintiffs do not allege that their claims arise out of any forum contacts with Pennsylvania by Fanjul or any of its alleged alter egos. The trial court therefore did not err in ruling on Fanjul's preliminary objections after already providing Plaintiffs with two rounds of jurisdictional discovery. *See* ***Nutrition Management Services, Co. v. Hinchcliff***, 926 A.2d 531, 536 (Pa. Super. 2007) (finding jurisdictional discovery was unnecessary when the issue raised by preliminary objections was whether allegations in plaintiff's complaint were legally sufficient to sustain specific personal jurisdiction).

Inicia controls a "sugar empire" through various alter ego subsidiaries, specifically, Ingenio Cristóbal Colón (Cristóbal Colón) and Compañía Anónima de Explotaciones Industriales (CAEI). Plaintiffs focus almost exclusively on the interconnectedness of these entities, and then argue that the actions of Cristóbal Colón and CAEI can be imputed to Inicia. Plaintiffs' Brief at 15-22, 41-43. In contrast to Fanjul, however, Plaintiffs contend that the trial court had both general and specific personal jurisdiction over Inicia. *Id*. at 43-45.[15]

First, Plaintiffs fail to explain how Pennsylvania would have general personal jurisdiction over Inicia, which is incorporated in the British Virgin Islands and based in Santa Domingo, Dominican Republic.[16] Plaintiffs argue that Inicia's lack of physical presence in Pennsylvania is not determinative of general personal jurisdiction, but then fail to point to any evidence that Inicia through its alleged alter egos carries on "a continuous and systematic part of its general business within this Commonwealth." 42 Pa.C.S § 5301(a)(2)(iii).

_____

[15] As noted before, Plaintiffs also raise a discovery claim concerning Inicia, arguing that the trial court erred in denying additional jurisdictional discovery against Inicia. However, Plaintiffs waited until their reply brief to provide argument in support of this claim. Rule of Appellate Procedure 2113 states that an "appellant may file a brief in reply to matters raised by appellee's brief not previously raised in appellant's brief." Pa.R.A.P. 2113(a). An appellant is prohibited from using their reply brief as a vehicle to argue issues raised but inadequately developed in their original brief. *Commonwealth v. Fahy*, 737 A.2d 214, 219 n.8 (Pa. 1999) (citations omitted). The issue is thus waived.

[16] None of Inicia's alleged alter egos are incorporated or have their principal place of business in Pennsylvania. At oral argument, Inicia stated that they were not sugar growers but a management company.

The trial court thus correctly concluded that it lacked general personal jurisdiction over Inicia.

Plaintiffs likewise provide little argument about specific personal jurisdiction, arguing merely that "the facts supported application of the stream of commerce theory to establish personal jurisdiction over Inicia." Plaintiffs' Brief at 45. As we explained in relation Fanjul, this is a misapplication of the "stream of commerce" theory of specific personal jurisdiction. Plaintiffs are Dominican residents who allege that they were injured in the Dominican Republic; they do not allege that Inicia produced a product that was placed into the stream of commerce that ultimately injured them in Pennsylvania. Accordingly, Plaintiffs' claim as to Inicia fails.[17]

## C.

Plaintiffs next argue that the trial court had personal jurisdiction over Drexel on two separate bases: (1) Drexel has substantial contacts with Pennsylvania to permit general personal jurisdiction; and (2) Drexel

---

[17] Inicia asks this Court to sanction Plaintiffs under Pa.R.A.P. 2744, urging this Court to deem Plaintiffs' appeal to be frivolous. "In determining the propriety of [sanctions], we are ever guided by the principle that an appeal is not frivolous simply because it lacks merit[; r]ather, it must be found that the appeal has no basis in law or fact." **U.S. Claims v. Dougherty**, 914 A.2d 874, 878 (Pa. Super. 2006). Though we have determined that Plaintiffs' issues as to Inicia lack merit, we decline to impose sanctions on Plaintiffs for filing this appeal, especially since Inicia is the only party requesting that we do so.

consented to jurisdiction by registering its products under Pennsylvania's Pesticide Control Act of 1973 (Pesticide Control Act), 3 P.S. §§ 111.21-112.

**1.**

Plaintiffs first claim that the trial court had general personal jurisdiction over Drexel. As we explained above, after the United States Supreme Court's decision in *Daimler*, general personal jurisdiction "will not lie" in a state in which a corporation is neither incorporated nor has its principal place of business. *Hammons*, 190 A.3d at 1261. Recognizing this, Plaintiffs argue that Drexel qualifies as an "exceptional case" under *Daimler* where general personal jurisdiction may be allowed over a corporation when its activities in a state are "so substantial and of such a nature as to render the corporation at home in that [s]tate." *Daimler*, 571 U.S. at 139 n.19.

Drexel is a chemical manufacturer of agricultural products that is incorporated in Tennessee and based in Memphis, Tennessee. Drexel produced six products that Plaintiffs alleged caused their injuries: Pas 80; MSMA 72 SL; Drexel Terbutrina 50 SC; Diuron 80 SP; Drexel Ametrina 50 SC; and 2-4 DB. Drexel's products are developed in Memphis and manufactured in Tennessee, Mississippi and Georgia. Drexel then sells its products to distributors who, in turn, the sell them to customers. Out of Drexel's over 100 customer distributors, less than 20 are licensed to do business in Pennsylvania, and only one is actually located in state.

For products shipped directly to Pennsylvania, Drexel's reported sales revenue totaled 2.26% in 2016 and 2.89% in 2017 out of its total sales revenue. These totals do not include shipments outside of Pennsylvania that are later shipped into the state. Drexel's corporate-designee, however, estimated that if those totals were included in its Pennsylvania sales revenue it would be no higher than 5% of its total sales revenue.

Additionally, Drexel has no plants or offices in Pennsylvania; its in-state physical presence is limited to a leased warehouse in Bucks County. Nor does Drexel have any employees or officers in state. Its closest employee is its Northeast sales representative, who is based in New Jersey. Drexel also does not directly advertise or market its products in Pennsylvania.

Based on our review, this is not an "exceptional case" in which Drexel can be constitutionally subjected to general personal jurisdiction in Pennsylvania. In **BNSF Railway Co. v. Tyrell**, 137 S. Ct. 1549 (2017), the United States Supreme Court addressed what constitutes an "exceptional case" under **Daimler** to allow general jurisdiction over a nonresident corporation outside of its place of incorporation and principal place of business. There, North and South Dakota filed a civil action Montana state court against BNSF, a Delaware-incorporated railway company with its principal place of business in Texas. BNSF maintained over 2,000 miles of railroad track in Montana (about 6% of its total track mileage); employed about 2,100 workers there (less than 5% of its total work force); had only one of its 24 automotive

facilities within the state; and generated less than 10% of its total revenues in the state. *Id*. at 1554. Finding these contacts insufficient to establish general personal jurisdiction, the **BNSF** Court explained:

> BNSF … is not incorporated in Montana and does not maintain its principal place of business there. Nor is BNSF so heavily engaged in activity in Montana as to render it essentially at home in that State. As earlier noted, BNSF has over 2,000 miles of railroad track and more than 2,000 employees in Montana. But, as we observed in **Daimler**, the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. Rather, the inquiry calls for an appraisal of a corporation's activities in their entirety; a corporation that operates in many places can scarcely be deemed at home in all of them.

*Id*. at 1559 (internal quotation marks, alterations, and citations omitted).

As the trial court observed, Drexel's contacts with Pennsylvania pale in comparison with those that the **BNSF** Court found to be insufficient to qualify as a **Daimler** "exceptional case" allowing general jurisdiction over a nonresident corporation. **See** T.C.O. at 9-10. With no offices in Pennsylvania, Drexel's physical presence in state is limited to leasing a single warehouse to store its products for distribution in the Northeast. Likewise, Drexel has no employees or officers in Pennsylvania; its nearest employee is a sales representative in New Jersey. Moreover, Drexel has only one distributor customer in Pennsylvania that accounts for less than 3% of its total gross revenue. Even if its shipments outside of Pennsylvania that are then shipped into the state were included, Drexel's revenues for Pennsylvania would still total less than 5% of their total revenues. Finally, Drexel has no direct marketing or advertising in Pennsylvania.

Despite these facts, Plaintiffs ask us to reject the trial court's reliance on **BNSF** but provide no argument explaining why Drexel's contacts with Pennsylvania are greater than those that the **BNSF** Court found to be insufficient. Moreover, Plaintiffs fail to point us to any Pennsylvania court has ever applied the purported **Daimler** "exceptional case" exception. Nor do Plaintiffs cite any federal or state court, post-**Daimler**, holding that a corporate defendant's contacts with a forum were so substantial as to permit general personal jurisdiction outside of its place of incorporation or principal place of business. Accordingly, the trial court correctly found that Drexel's contacts with Pennsylvania were insufficient to constitutionally allow general personal jurisdiction.

## 2.

Plaintiffs next claim that Drexel has consented to general jurisdiction in Pennsylvania by registering its pesticides under the Pesticide Control Act. Though Drexel has neither registered as a foreign corporation doing business in Pennsylvania nor consented to jurisdiction here, Plaintiffs contend that Drexel's registration of its pesticides is tantamount to registering as a foreign corporation in Pennsylvania and thus subjecting itself to personal jurisdiction under 42 Pa.C.S. § 5301(a)(2).[18]

---

[18] Section 5301 of the Judicial Code provides, in relevant part:

In support, Plaintiffs rely on the declaration of purpose of the Pesticide Control Act, which is to "to regulate in the public interest, the labeling, distribution, storage, transportation, use, application, and disposal of pesticides." 3 P.S. § 111.23. The Pesticide Control Act requires that "[e]very pesticide which is distributed in this State shall be registered[.]" 3 P.S. § 111.25a(a). "Distribute" is defined in the Act as "offer for sale, hold for sale, sell, barter, or supply pesticides in this State." 3 P.S. § 111.24. Based on this, Plaintiffs believe that Drexel understood that it was subjecting itself to general personal jurisdiction in Pennsylvania. We disagree.

---

**(a) General rule.**--The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

*     *     *

(2) Corporations.--

(i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.

(ii) Consent, to the extent authorized by the consent.

(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa.C.S. § 5301(a)(2)(i)-(iii).

Besides citing no case law in support of its claim, Plaintiffs are asking us to ignore that the Pesticide Control Act contains no provisions notifying registrants that they will be subjected to general personal jurisdiction in Pennsylvania under 42 Pa.C.S. § 5301. This stands in contrast to foreign corporations and limited liability companies being required under the Pennsylvania Associations Code, 15 Pa.C.S. §§ 101-419, to register with the Department of State before conducting business in Pennsylvania. 15 Pa.C.S. § 411(a). By registering to do business here, those entities are put on notice that our courts will be permitted to exercise general personal jurisdiction over any cause of action that is asserted against them. 42 Pa.C.S. § 5301(a)(2)(i).

Significantly, this Court has held that, even after **Daimler**, consent by registration remains a viable method of obtaining personal jurisdiction because the party has waived challenging personal jurisdiction "by registering to do business under a [statutory framework] which *specifically advises the registrant of its consent by registration*." **Webb-Benjamin, LLC v. International Rug Group, LLC**, 192 A.3d 1133, 1139 (Pa. Super. 2018) (quoting **Bors v. Johnson & Johnson**, 208 F.Supp.3d 648, 655 (E.D. Pa. 2016)) (emphasis in original). Indeed, one of the purposes of requiring registration of foreign corporations is to facilitate the subjection of those corporations to Pennsylvania courts and ensuring that citizens have access to information in their dealings with them. 15 Pa.C.S. § 412, Comments; **Hoffman Const. Co. v. Erwin**, 200 A. 579, 580 (Pa. 1938) (purpose of

registration "is to bring foreign corporations doing business in this State within the reach of legal process").

Additionally, as Drexel observes, the Pesticide Control Act requires manufacturers to not only register its pesticides that it offers to sell or actually sells in Pennsylvania, but also to register any pesticides that it holds for sale, supplies, transports, or delivers for transport in state. 3 P.S. § 111.24 ("Distribute" means to offer for sale, hold for sale, sell, barter, or supply pesticides in this State."); 3 P.S. § 111.28(a)(1) ("No person shall distribute, transport, or deliver for transportation, into, through or within this Commonwealth … [a]ny pesticide which has not been registered pursuant to the provisions of this act."). As a result, certain activities require manufacturers to register their pesticides with Pennsylvania but do not also obligate them to register as a foreign corporation. We, therefore, cannot conclude that registrants under the Pesticide Control Act voluntarily consent to general personal jurisdiction simply by registering their pesticides with Pennsylvania.

**D.**

In their final challenge, Plaintiffs argue that the trial court erred in concluding that it lacked general personal jurisdiction over UPL, which is an Indian corporation based in Mumbai, India. Plaintiffs alleged that UPL are the manufacturers of Asulox SL 40, one of the pesticides that they were exposed to during their work. Because UPL is neither incorporated nor has its principal

place of business in Pennsylvania, Plaintiffs seek to impute Pennsylvania's general personal jurisdiction over UPL's subsidiary UPI, which is based in Pennsylvania. Plaintiffs maintain that UPI is controlled by UPL and that it is permissible for UPL to be subjected to general personal jurisdiction in Pennsylvania under an alter ego theory of jurisdiction.

While there are few cases addressing it, there is Pennsylvania precedent for an alter ego theory of personal jurisdiction over a foreign corporation.[19]

---

[19] Citing **Daimler**, the trial court held that UPI's general personal jurisdiction could not be imputed to UPL even if it determined that UPI was a wholly-owned subsidiary of UPL. T.C.O. at 11. The **Daimler** Court held that a German car manufacturer could not be subjected to general personal jurisdiction in California, even with its New Jersey-based subsidiary's contacts imputed to it and those contacts being deemed sufficient to render the subsidiary "at home" California. **Daimler**, 571 U.S. at 136-39. Justifiably, some federal courts have questioned whether general personal jurisdiction over a foreign parent corporation may be imputed through its subsidiary. **See**, **e.g.**, **Sabol v. Bayer Healthcare Pharm., Inc.**, ___ F.Supp.3d ___, 2020 WL 705170, at *8 (S.D.N.Y. Feb. 12, 2020) (observing that, post-**Daimler**, "it is not entirely clear that courts may impute general jurisdiction from a domestic entity to a foreign entity").

However, the **Daimler** Court was reviewing the Ninth Circuit's agency theory of jurisdiction, noting that it represented "a less rigorous test" than the more stringent alter ego approaches developed by other Circuit Courts of Appeals. **Daimler**, 571 U.S. at 134-35 (observing that "several Courts of Appeals have held ... that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego"). Because the **Daimler** Court did not explicitly disavow application of the alter ego approach to general personal jurisdiction, we will address the merits of Plaintiff's alter ego argument in regards to UPL. **See Seeley**, 206 A.3d at 1134-35 (this Court finding that foreign parent was not subject to general personal jurisdiction in Pennsylvania based on its subsidiary being located in Delaware County).

Generally, a corporate parent will retain its distinct identity and not be subject to the jurisdictions of its subsidiaries, even when it shares common directors, officers and shareholders. *Botwinick v. Credit Exch., Inc.*, 213 A.2d 349, 354 (Pa. 1965). In *Botwinick*, however, our Supreme Court explained:

> There is a well recognized exception to these general rules if the record demonstrates that the subsidiary is the 'alter ego' of the parent to the extent that domination and control by the parent corporation renders the subsidiary a mere instrumentality of the parent; under such extreme circumstances the parent corporation may be held to be doing business within the state under the facade of the subsidiary[.]

*Id*. (internal citations omitted); *Barber v. Pittsburgh Corning Corp.*, 464 A.2d 323, (Pa. Super. 1983) (personal jurisdiction established where defendants purposely availed themselves of benefits and protections of Pennsylvania law and substantially conducted recurring business affairs through operations of its industrial subsidiaries).

While this inquiry has rarely been addressed since *Botwinick*, our sister federal courts have frequently addressed alter ego jurisdiction and developed the pertinent inquiry. Under the alter-ego theory of personal jurisdiction, "if a subsidiary is 'merely the agent' of its parent corporation or the parent corporation 'controls' the subsidiary, 'then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary.'" *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470–71 (E.D. Pa. 2019) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018)).

The theory applies only if "the degree of control exercised by the parent is greater than normally associated with common ownership and directorship" and "the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 422 (E.D. Pa. 2005) (citation omitted).

In determining whether a subsidiary is the alter ego of its parent corporation, courts consider the following factors:

> (1) ownership of all or most of the stock of the related corporation; (2) common officers and directors; (3) common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agent or departments; (9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive distributor; and (10) receipt by the officers of the related corporation of instruction from the principal corporation.

*Lutz*, 376 F. Supp. 3d at 47 (quotations and citations omitted).

"These factors are best viewed as a non-exclusive guide to help resolve the broader issue of whether the companies have a single functional and organic identity." *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 676 (E.D. Pa. 2005) (internal quotation omitted). Thus, "no one aspect of the relationship between two corporations unilaterally disposes of the analysis, and the court may consider any evidence bearing on the corporations' functional

interrelationship." ***In re Chocolate Confectionary Antitrust Litigation***, 674 F. Supp. 2d 580, 598 (M.D. Pa. 2009).

Plaintiffs' argument, which is less than a page-and-a-half and contains no citations to either the record or case law, highlights a few facts developed through discovery that they assert weigh in favor of finding that UPI is the alter ego of UPI. First among these, Plaintiffs emphasize that UPL is expected to follow UPL's policies and that their compliance is monitored, with these policies including marketing coordination, human resources, contracting requirements, and coordination of operating expenses.

However, monitoring and gathering information about a subsidiary's performance is typical in a parent-subsidiary relationship and does not involve the kind of day-to-day control needed to establish an alter ego relationship. ***See In re Chocolate Confectionary Antitrust Litigation***, 641 F. Supp. 2d. 367, 386 (M.D. Pa. 2009) (approval of budgets and gathering information about corporate performance typify standard parent-subsidiary interactions). Further, compliance with corporate-wide accounting, finance, or sales protocols are likewise typical of the parent-subsidiary relationship. ***Id***. ("Uniformity in finance procedure is a practical necessity for global conglomerates to monitor corporate growth and maximize efficiency, and

imposition of mandatory financial reporting does not divest subsidiaries of control over daily operating activities.") (citation omitted).[20]

Plaintiffs next highlight that UPI is free to use UPL's trademark symbol without any compensation. While this may be indicative of an alter ego relationship, it would not rise to the level of necessary control to establish it. *See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010) (finding common marketing image and joint use of trademarked logos does not alone justify finding alter ego relationship).

Plaintiffs also assert that UPI is the exclusive sales agent of UPL agricultural products in the United States. UPL sells its products to its subsidiaries outside of India, who then, in turn, sells them to UPI.[21] Plaintiffs' argument, however, is undercut by the fact that UPI is free to purchase and sell products made by other manufacturers. Thus, whatever weight that can be attached to UPL selling its products in the US through UPI in the United

---

[20] In fact, UPL's general counsel, Rohit Kumar, explained in his deposition that only UPI reported to UPL through one employee, namely, UPI's president or vice president of business, who would report UPL's global sales director. Deposition of Rohit Kumar, 7/24/18, at 30. Kumar classified this reporting as being a performance review in the nature of a supervisory capacity. *Id*. Significantly, Kumar stated that UPL does not have involvement in the day-to-day operations of UPI. *Id*. at 39.

[21] UPL does direct sales to the United States, but it is a relatively miniscule portion of their global sales, accounting for 0.09% in 2017 and 0.16% in 2018.

States is diminished by the fact that UPI does not exclusively sell UPL products. Plaintiffs acknowledge this in their brief but fail to explain why this does not undermine their exclusive agent argument.

Moreover, as UPL points out in their brief, there were a number of factors that weigh in favor of UPI not being an alter ego of UPL, namely, (1) UPL owns none of UPI's stock; (2) no common officers or directors between the two entities; (3) no common use of employees; and (4) no interchange of managerial or supervisory personnel. All of this is in addition to neither entity sharing bank accounts; maintaining separate financial and accounting records; having separate employees; and UPI being adequately and independently financed. Significantly, Plaintiffs do not contest any of these facts, all of which strongly weigh in favor of finding that UPL and UPI exercise a typical parent-subsidiary relationship rather than UPI being the mere instrumentality of UPL.[22]

Accordingly, we find that the trial court did not err in finding that Plaintiffs could not impute UPI's general personal jurisdiction in Pennsylvania to UPL through an alter ego theory of jurisdiction.

---

[22] Though Plaintiffs' alter ego theory is lacking under the facts of this case, alter ego theory remains a viable avenue for asserting personal jurisdiction when there is evidence that a Pennsylvania subsidiary is the mere instrumentality of its parent corporation. *See **Williams by Williams v. OAO Severstal***, No. 938 WD 2017 (Pa. Super. filed October 3, 2019) (unpublished memorandum) (finding specific personal jurisdiction based on defendant parent corporation using its subsidiary as its mere Pennsylvania instrumentality).

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/20