J-A11033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ROBERT M. MATESIC, AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: NADA JORDAN AND RICHARD S. MATESIC | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 455 WDA 2020 |

Appeal from the Order Entered February 18, 2020[1]
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  3201-2011

| | | |
|---|---|---|
| IN RE: ROBERT M. MATESIC, AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: NADA JORDAN AND RICHARD S. MATESIC | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 870 WDA 2020 |

Appeal from the Order Entered July 17, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  3201 of 2011

BEFORE:  McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED: JUNE 21, 2021**

---

[1] We note that while the order in question was dated February 14, 2020, it was not docketed until February 18, 2020.  Thus, we have corrected the caption to reflect the filing date.

In these consolidated appeals,[2] Nada Jordan (Nada) and Richard S. Matesic (Richard) (collectively Appellants) appeal from two orders entered in the Allegheny County Court of Common Pleas with respect to the guardianship of their adult brother, Robert M. Matesic (Robert), an incapacitated person. The order appealed at Docket No. 455 WDA 2020 — entered February 18, 2020 — appointed Carole Shepard as Successor Permanent Limited Guardian (PLG) of the Person of Robert, replacing Rhonda Lazarus. The order appealed at Docket No. 870 WDA 2020 —entered July 17, 2020 — directed that the Successor PLG would be permitted to charge $85.00 per hour for services, to be paid equally by Richard and another brother, Appellee David Matesic (David).[3] With regard to the February 18th order, Appellants contend the orphans' court abused its discretion when it failed to conduct a full evidentiary hearing before removing the prior PLG, conducted an ex parte investigation of the case, prohibited Appellants from cross-examining or deposing Robert's psychiatrist, refused to disclose to Appellants two written accounts by the former PLG, and failed to recuse itself from the administration of the case. With regard to the July 17th order, Appellants argue the orphans' court exceeded its jurisdiction by entering the order after an appeal was filed from the February 18th order, and abused its discretion by granting relief without

---

[2] On November 4, 2020, this Court granted Appellants' application to consolidate these two appeals. **See** Order, 11/4/20.

[3] As we will discuss **infra**, David is the PLG of the Robert's Estate.

- 2 -

first adjudicating Appellants' motion for recusal or permitting Appellants the opportunity to respond. For the reasons below, we affirm the February 18th order appointing Shepard as Successor PLG, and quash the appeal from the July 17th order.

This contentious litigation centers on the appointment of a successor PLG for the parties' 59-year old[4] incapacitated brother, Robert. For most of his life, Robert was cared for by his mother, Irene Matesic. *See* N.T., 6/28/11, at 14. In August of 2009, his sister, Nada, moved into the family home and assumed the role of Robert's "primary, live-in care giver." Richard's Petition for Appointment of Plenary Guardian of the Person & Estate of Robert M. Matesic, 5/24/11, at 9. However, in April of 2011, Robert and his mother began living with his brother David, where Robert continues to reside to this day. *See* N.T., 6/28/11, at 16. Irene is now deceased.[5]

As the orphans' court observed, "[d]iscord among Robert's [eight] siblings regarding appropriate treatment of and accessibility to Robert has persisted for a number of years[.]" Orphans' Ct. Op., 5/19/20, at 6. This discord has led to two factions: on one side is David, Roberta Matesic, Betsy Walter, Dan Matesic, and Stephen Matesic; and on the other side is Richard,

---

[4] Robert was born on April 13, 1962.

[5] At a February 12, 2019, hearing, Richard stated his mother had "recently passed away." N.T., 2/12/19, at 5.

Nada, and Susan Ann Shannon. *See* N.T., 2/12/19, at 5. Richard and Nada, the interested parties who filed this appeal, contend David's faction has turned Robert against them.[6]

The protracted procedural history of these appeals began in May of 2011, when Richard filed a petition asserting Robert was an incapacitated person, and requested the appointment of a plenary guardian for Robert's person and estate. On June 6, 2011, Arnold Caplan, Esquire (Attorney Caplan) was appointed as Robert's counsel. *See* Order, 6/6/11. Following hearings conducted in July and November, on November 30, 2011, the orphans' court entered an order adjudging Robert to be a "totally incapacitated person," and appointing two PLGs — Attorney Caplan as PLG of Robert's Person and David as PLG of Robert's Estate. *See* Order, 11/30/11, at 2. The court found that Robert "suffers from autism and mental retardation, conditions or disabilities which totally impair his capacity to receive and evaluate information effectively and to make and communicate decisions concerning his management of financial affairs or to meet essential requirements for his physical health and safety." *Id.* at 1. The November 30th order directed that the PLG of Robert's Person (Attorney Caplan) "shall have authority to consent to health care, residency, placement, and visitation of Robert . . . without exception [and] assure that Robert . . . receives appropriate services and shall assist him in developing self-reliance and independence." *Id.* at 2.

---

[6] Susan is not one of the interested parties in this appeal.

Over the ensuing seven years, familial discord led to very little contact between Robert and Appellants. The annual reports filed by Attorney Caplan, as PLG of Robert's person, revealed the continued estrangement between Robert and three of his siblings — Richard, Nada, and Susan — as well as Attorney Caplan's hope for their reunification. *See* Guardian of the Person Annual Report, 3/15/12, at 4-5; Guardian of the Person Annual Report, 3/19/13, at 4-5; Guardian of the Person Annual Report, 3/18/14, at 4; Guardian of the Person Annual Report, 3/12/15, at 4; Guardian of the Person Annual Report, 3/15/16, at 5; Guardian of the Person Annual Report, 4/24/17, at 4-5; Guardian of the Person Annual Report, 3/29/18, at 4-5.

On December 18, 2018, Attorney Caplan filed a petition for the appointment of a Successor PLG for Robert's Person, as he sought to resign from the position, and proposed River Communities Fiduciary Services as Successor PLG. *See* Attorney Caplan's Petition for Appointment of Successor Limited Guardian of the Person of an Incapacitated Person, 12/18/18, at 2.[7] Attorney Caplan averred that he believed "a relationship between [Robert] and all of his siblings would be enriching to [him], including reunification with the three siblings who were cut off from contacts with [him]." *Id.* David filed an Answer and New Matter on February 11, 2019, in which he proposed that

_____

[7] The petition included in the certified record appears to be missing a page, as it starts with paragraph 6.

he, or, alternatively Carole Shepard,[8] be named Successor PLG of Robert's Person. **See** David's Answer and New Matter to Petition for Appointment of Successor Limited Guardian of the Person of an Incapacitated Person, 2/11/19, at 4-5.

The orphans' court conducted an initial hearing on February 12, 2019, at which time Attorney Caplan informed the court that River Communities Fiduciary Services withdrew its request to serve as Successor PLG. N.T., 2/12/19, at 7. The court continued the hearing so that it could hear from Robert's doctors before naming a successor PLG. **See id.** at 28-29. That same day, Richard entered his appearance as attorney for himself and Nada. At an August 22, 2019, motions hearing, Richard submitted Rhonda Lazarus[9] as Successor PLG. **See** N.T., 8/22/19, at 6.

The hearing continued on August 29, 2019, at which time Attorney Caplan, as well as both proposed Successor PLGs — Lazarus and Shepard — testified. Attorney Caplan told the court that both Lazarus and Shepard were "good qualified candidates" and he thought "highly" of both of them. **See** N.T., 8/29/19, at 86. Although he consented to the appointment of Shepard,

---

[8] Shepard is the owner of Elder Care Transitions, which provides "care management for the elderly and disabled." **See** N.T., 8/29/19, at 25. Prior to this matter, she had not been court-appointed as a guardian. **Id.** at 48.

[9] Lazarus began serving as a court-appointed guardian in 2006. N.T., 8/29/19, at 60. At the time of the August 29th hearing, she was serving as a guardian in "six open cases." **Id.** at 66.

he acknowledged he has referred "many cases" to Lazarus, and Shepard "had not yet been appointed by [the] court as a guardian." *Id.* The parties also submitted for the court's review the deposition of Dr. Kenneth Goetz, Robert's treating psychiatrist.[10] On September 7, 2019, the orphans' court entered an order discharging Attorney Caplan as PLG of Robert's Person, and appointing Lazarus as Successor PLG.[11] *See* Order, 9/7/19.

On October 18, 2019, Attorney Caplan, serving only as court-appointed counsel for Robert, filed a petition for review. Attorney Caplan asserted that Lazarus had been unable "to schedule a visit with [Robert] separate from any other family members," and that she believes David "may be interfering with her ability to schedule a visit including keeping Robert home from work." Attorney Caplan's Petition for Review, 10/18/19, at 1. In addition, Attorney Caplan requested a review of Lazarus' compensation "due to the complexity of matters involving [Robert] and the family dynamics," which required "a very large amount of time . . . on her part." *Id.* at 2. On October 25, 2019, the orphans' court entered the following order:

---

[10] Counsel for David's faction — Matthew Carl, Esquire — attempted to introduce Dr. Goetz's August 21, 2019, deposition at the August 29th hearing. N.T., 8/29/19, at 58. However, Richard objected because the copy was not reviewed and signed by Dr. Goetz. *Id.* Attorney Carl stated he would have Dr. Goetz review and sign the deposition, for submission to the court at a later date. *Id.* at 58-59. The deposition transcript is included in a supplemental record.

[11] The Order also authorized Lazarus "to receive compensation" of $100 per month to be paid from Robert's Estate. Order, 9/7/19, at 3.

(1) [Robert] shall immediately be returned to his regular work schedule at Achieva in order to provide consistency in routine work activities.

(2) [Lazarus] shall have unrestricted access to [Robert] without interference from the Limited Guardian of the Estate [David] and/or other family members. [Lazarus] shall be permitted to visit with [Robert] at work, at home, or elsewhere as arranged by and in the sole discretion of [Lazarus].

(3) [Lazarus] shall determine the need for evaluation and/or treatment by professionals including therapists. Cost to be paid equally by David Matesic and Richard Matesic.

(4) Due to the complexity of the family circumstances and anticipated amount of time needed by [Lazarus, she] shall be permitted to charge $85/hour for services (in lieu of a flat rate of $100/month). Costs to be paid equally by David Matesic and Richard Matesic.

(5) Family members shall abide by directives of [Lazarus] as determined by [Lazarus] to be in the best interests of [Robert].

Order, 10/25/19, at 1-2. Although Attorney Caplan was still counsel of record for Robert, on November 12, 2019, Charles Avalli, Esquire entered his appearance on behalf of Robert.[12]

On November 14, 2019, Attorney Caplan filed both a motion to strike Attorney Avalli's appearance and a petition for contempt. Attorney Caplan sought to strike Attorney Avalli's entry of appearance because he (Attorney Caplan) was appointed as Robert's counsel on June 6, 2011, and had not been

---

[12] On November 13, 2019, David, as PLG of Robert's Estate, and Robert, *via* Attorney Avalli, filed a joint notice of appeal from the October 25th order. Subsequently, on November 27th, David filed another notice of appeal, proceeding individually. Those appeals were later discontinued in this Court. *See In re: Matesic*, 1672 WDA 2019, Order, 1/15/20; Praecipe to Discontinue Appeal, 1/16/20.

discharged by the court, nor withdrawn his appearance.[13]  **See** Attorney Caplan's Motion to Strike Appearance, 11/14/19, at 1-2.  Attorney Caplan also requested the orphans' court hold David in contempt for "willfully disobeying" the court's October 25, 2019, order by:  (1) failing to return Robert to work at Achieva, (2) "interfering with [Lazarus'] access to" Robert, including her requests to conduct an initial visit at Robert's workplace, and (3) "failing to abide by [the] directives and decisions of [Lazarus]."  Attorney Caplan's Petition for Contempt, 11/14/19, at 1-2.

The orphans' court conducted a hearing on November 26, 2019, to consider several pending motions.[14]  First, the court questioned Attorney Avalli concerning his engagement by Robert, who is an incapacitated person.  **See** N.T., 11/26/19, at 3-9.  Upon learning David was paying counsel's fee, and that Robert's Successor PLG — Lazarus — did not consent to the

---

[13] Attorney Caplan further stated his belief that David engaged the services of Attorney Avalli on behalf of Robert, who is "totally incapacitated and unable to engage an attorney by himself."  Attorney Caplan's Motion to Strike Appearance at 2.  If so, Attorney Caplan averred, there would be an "inherent conflict of interest" in the engagement.  **Id.**

[14] We note that on November 25th, Appellants filed an "emergency motion" seeking reconsideration of the court's October 25th order.  **See** Appellants' Emergency Motion per Pa. Orphans' Court Rule 8.2 for Reconsideration of Court's October 25, 2019 Order, 11/25/19.  Appellants requested the court grant reconsideration of its October 25th order within 30 days of its filing so as to frustrate David's pending appeal.  **See id.** at 6-7 ("Undersigned counsel respectfully submits that to alleviate intervention by Superior Court at this juncture, [the trial court] should . . . vacate its October 25th Order, and do so within 30 days of the latter's docketing[.]")

representation, the court granted Attorney Caplan's motion to strike Attorney Avalli's appearance. *See id.* at 6, 11. *See also* Order, 12/2/19. Furthermore, after hearing testimony from Lazarus pertinent to the petition for contempt, the court informed the parties it would schedule a contempt hearing to provide David, who was not present, the opportunity to respond. *See* N.T., 11/26/19, at 30. However, the court stated that it was "very close" to holding David in contempt based on Lazarus' testimony concerning his efforts to obstruct her initial meeting with Robert. *Id.* Further, the orphans' court instructed David's attorney:

> Convey to your client that there will be a contempt hearing. Convey to your client that at that contempt hearing, we shall have a report, and that report will be that Robert . . . met with[ Lazarus].
>
> If not, . . . the contempt hearing will be very quick, because I have outlined . . . at least three problems I have with this case in terms of undue influence.

*Id.* at 33.

The contempt hearing was held on December 11, 2019. First, Lazarus detailed her efforts to set up an initial meeting with Robert, and David's efforts to obstruct her access. *See* N.T., 12/11/19, at 17-31. She also acknowledged that she believes David "has a very strong influence" over Robert, although she emphasized the importance of her remaining objective. *Id.* at 85-86. Lazarus testified:

> [O]ne of the things that I said to David and said to everybody in this family, both factions, is that I would not meet with anybody until we come to an agreement in court.

And I want to meet with Robert first, so I think it's really important to not be biased.

*Id.* at 86.

Dr. Goetz, Robert's treating psychiatrist, testified that his recommendation continues to be that Lazarus meet Robert initially at Robert and David's home, where he feels comfortable, and permit David and his wife to introduce Lazarus to him. N.T., 12/11/19, at 41. Upon questioning by the orphans' court, Dr. Goetz agreed he would be open to facilitating the first meeting with Lazarus. *Id.* at 50-53. Danielle Risha, one of Robert's caregivers, testified that Robert is comfortable with her, and is best when he has a routine. *See id.* at 63-64.

Lastly, David testified that he has been ready and willing to produce Robert for an interview with Lazarus, but "she has not been able to interview him because of conditions." N.T., 12/11/19, at 68. David laid the blame on Lazarus, emphasizing that she had been unwilling to compromise, and offered no alternatives to meeting Robert at work, which David felt would not provide a comfortable environment for Robert. *See id.* at 74-75.

After hearing all the testimony, the orphans' court found David in contempt of court for failing to facilitate the meeting between Robert and Lazarus, but declined to enter a final order or impose punishment. *See* N.T., 12/11/19, at 80 ("I think you probably have a problem with this meeting, but I'm getting the sense from other testimony . . . that you don't have the *mens re*[*a*]. You don't have the intent to stop the meeting; you want the meeting to be not necessarily controlled [but] as helpful to Robert as possible.").

- 11 -

At the conclusion of the hearing, the court directed David's counsel,[15] Attorney Caplan, and Lazarus to meet in the court's conference room and "work out a date and a place [for Lazarus to meet with Robert] to be confirmed by Dr. Goetz." N.T., 12/11/19, at 93. As the parties started to leave the room, the court noticed Richard speaking with Lazarus. When the court inquired what he was doing, Richard stated he "was about to make an oral motion" to participate in the conference, and if that were denied, he offered to act as Lazarus' counsel. *Id.* at 94. The court told Richard to "[b]e seated" and expressed its concern regarding Lazarus' objectivity. *Id.* at 94-95 ("And now I have a problem with Ms. Lazarus. Is she objective? How am I going to make that decision? So again, this is another complication."). Following the conference, the parties informed the court that they agreed that Risha, Robert's caregiver, would accompany Robert to meet with Lazarus with Dr. Goetz present. *Id.* at 96-97. Following the meeting, both Dr. Goetz and Lazarus would submit a report directly to the court, which would then decide whether "to circulate that report to those that are of interest." *Id.* at 97. Accordingly, the orphans' court continued the contempt hearing pending the

_____

[15] At that time, David was represented by both Attorney Carl and Robert Del Greco, Esquire.

- 12 -

meeting with Robert. *Id.* at 97-98. The meeting between Lazarus and Robert occurred on December 31, 2019.[16]

On January 7, 2020, Lazarus submitted a petition for allowance, seeking payment of $5,430.00 for the services rendered between August 2019 and December 5, 2019. *See* Lazarus' Petition for Allowance, 1/7/20, at 2. Further, she requested David solely be required to pay her expenses because, she complained, "the majority of time was caused by his disagreements with the Court's decisions." *Id.* Lazarus attached a detailed time sheet to her petition. *See id.* at Exhibit A. David filed a response in opposition, noting Lazarus' time sheet reflected only six conferences with him or his counsel during the relevant period, but 20 conferences with Richard during that same period. *See* David's Response in Opposition to Petition for Allowance, 1/13/20, at 2-3. On January 21, 2020, the orphans' court entered an order directing that David and Richard each pay half of Lazarus' requested fee allowance. *See* Order, 1/21/20.

On January 23, 2020, David filed a petition for review requesting the orphans' court remove Lazarus as Robert's Successor PLG and replace her with Shepard, whom the parties and court previously considered at the August 29, 2019, hearing. David's Petition for Review, 1/23/20, at 7. David averred Lazarus demonstrated a "lack of objectivity and bias" against him, as evidenced by her testimony at the contempt hearing that she believes David

---

[16] After complying with the court's order, David filed a motion to purge the finding of contempt, which the court granted on January 22, 2020. *See* Order, 1/22/20.

has a "very strong influence" over Robert. *See id.* at 4. Further, David emphasized that while Lazarus averred most of her time resulted from David's disagreement with the court's decisions, her "invoice reflected only six (6) instances of correspondence or conference with either David . . . or his counsel since her appointment as guardian[, but d]uring that same period, [she] had **twenty (20)** conferences with Richard[.]" *Id.* at 5. David pointed out that Lazarus' time sheet contradicted her testimony at the contempt hearing that she would not meet with any of Robert's family members until she met with Robert first. *See id.* at 6.

Attorney Caplan, Lazarus, and Appellants all filed responses to David's petition for review. Attorney Caplan noted David's petition was "primarily focused on the interpersonal dealings between" David and Lazarus, and averred "nothing about Robert's well-being[.]" Attorney Caplan's Response to Petition for Review, 1/29/20, at 2. He suggested the court allow Lazarus more time in her role as Successor PLG. *Id.* In her response, Lazarus denied David's allegations of bias, and, in new matter, averred that David has continued to frustrate her authority as Successor PLG.[17] *See* Lazarus' Answer to Petition for Review and New Matter, 2/12/20, at 1-6.

_____

[17] In support of her allegation, Lazarus attached to her answer two emails. In the first, which is undated, Lazarus informed David's counsel that she scheduled a psychological evaluation for Robert with a new psychologist on February 21, 2020, at 1:00. Lazarus' Answer to Petition for Review & New Matter, at Exhibit A, email from Lazarus to Robert Del Greco, Esq. The second email, dated January 16, 2020, is Attorney Del Greco's response, in which he

Appellants filed a 19-page response and new matter, denying David's claims of bias, and attached 61 pages of documents and transcripts dating back to 2011, in an effort to demonstrate "David and his four allied siblings violated the interests protected by 20 Pa.C.S.A. § 5521(a)."[18]  Appellants' Response & New Matter, 2/11/20, at 4.  In addition, Appellants requested the court release to them two confidential reports authored by Lazarus in October 2019 and January 2020, as well as a report authored by Dr. Goetz in late 2019 or early 2020.  ***See id.*** at 17.

_____

stated he could not "verify" that Robert would be able to attend the appointment, but asked her to "keep the appointment as schedule[d]" and he would get back to her.  ***Id.*** at Exhibit A, email from Attorney Del Greco to Lazarus, 1/16/20.  Thus, contrary to Lazarus' characterization in her petition, David did not inform her that he "would not agree to such appointment."  ***See id.*** at 6.

[18] Section 5521(a) of the Probate, Estate and Fiduciaries Code defines the duties of the guardian of a person as follows:

> **(a) Duty of guardian of the person. —** It shall be the duty of the guardian of the person to assert the rights and best interests of the incapacitated person.  Expressed wishes and preferences of the incapacitated person shall be respected to the greatest possible extent.  Where appropriate, the guardian shall assure and participate in the development of a plan of supportive services to meet the person's needs which explains how services will be obtained.  The guardian shall also encourage the incapacitated person to participate to the maximum extent of his abilities in all decisions which affect him, to act on his own behalf whenever he is able to do so and to develop or regain, to the maximum extent possible, his capacity to manage his personal affairs.

20 Pa.C.S. § 5521(a).

On February 14, 2020, the orphans' court conducted a motions hearing on David's petition for review. The court noted that Appellants had faxed an amended answer and new matter earlier that morning.[19] *See* N.T., 2/14/20, at 2. David's counsel, Attorney Del Greco, argued that Lazarus has demonstrated a bias against David. In support, he pointed to: Lazarus' comments at David's contempt hearing, when the court directed her, David's counsel and Attorney Caplan to work out a date and place for her to meet Robert, that she was entering "into battle unarmed;" Richard's offer, at the same time, to represent her; and her invoice, which showed 20 conferences with Richard before she even met Robert. *See* N.T., 2/14/20, at 9-11. Attorney Caplan argued that much of Attorney Del Greco's argument was "largely irrelevant" to the petition, which focused on "interpersonal dealings" rather than "Robert's wellbeing." *Id.* at 13-14. He further argued that because it took four months to schedule the first meeting between Lazarus and Robert, the court should "[g]ive it some time" and permit Lazarus "to do her work in this case." *Id.* at 15.

Leeann Syme, Esquire, represented Lazarus at the hearing. Attorney Syme reiterated Attorney Caplan's concern that each familial faction has its own agenda, and "they seem to have forgotten Robert in that." N.T., 2/14/20,

_____

[19] The only new assertion in Appellants' amended response was a claim that the orphans' court violated the Code of Judicial Conduct when it solicited "ex parte reports" from Dr. Goetz and Lazarus following the December 31st meeting with Robert. *See* Appellants' Amended Response and New Matter, 2/14/20, at 18-19.

- 16 -

at 15. She, too, requested the court grant Lazarus more time to "do her job," as well as "require David to cooperate." *Id.* at 15-16.

Richard, arguing as counsel for Appellants, stated that "what Ms. Lazarus has encountered . . . is simply a replay of the obstructionism that David . . . subjected [Attorney] Caplan to for the entire nine years that [he] served as the guardian of the person." N.T., 2/14/20, at 17. Richard characterized David's actions as "exploitation of Robert" and reiterated his claim that "Robert's statutorily-protected interest under Section 5521(a) of the Probate Estate and Fiduciary Code has been violated by David . . . and his four allied siblings." *Id.* at 17-18. When the court asked Richard if he had reviewed Lazarus' invoice, he replied that he did not, and then complained that "[t]he interested parties were not included in [the] conference" at David's contempt hearing on December 11th. *Id.* at 20-21. He also argued that Attorney Del Greco had "misattributed" the statement, "I'm going into battle unarmed" to Lazarus, when it was he, in fact, who made the statement. *Id.* at 22. Richard described the misstatement as "defamation" of Lazarus, a characterization the orphans' court quickly dismissed. *See id.*

Following argument by counsel for all parties, the orphans' court first ruled that it would not release the reports submitted by Dr. Goetz and Lazarus to the parties.[20] *See* N.T., 2/14/20 at 30. Next, the court considered David's

---

[20] Both Attorney Caplan and Attorney Syme agreed the reports did **not** constitute ex parte communications. N.T., 2/14/20, at 29-30. Indeed,

petition for review and the other parties' responses. The court specifically found Appellants' answer and new matter did not "address the specific concerns raised in the Petition for Review." *Id.* at 34. Thus, "based on the testimony and the documents, the review of the bills and costs incurred[,]" the orphans court terminated Lazarus' appointment as Successor PLG and appointed Shepard to the position. *Id.* at 38-39. When Richard requested to present evidence relevant to the court's decision to replace Lazarus with Shepard, the orphans' court declined this request. *See id.* at 39. The court stated: "Ms. Shepard was here [on August 29, 2019]. We had a hearing. She was vetted, and that's my decision." *Id.* at 40. On February 18, 2020, the orphans' court entered an order vacating its prior orders dated September 5 and October 20, 2019, and appointing Shepard as Successor PLG of Robert's Person, replacing Lazarus. Order, 2/18/20. The order did not set forth Shepard's compensation.

On March 6, 2020, Appellants filed a 29-page motion for reconsideration, requesting the court (1) reconsider or vacate its February 18th order, and (2) recuse itself from further proceedings in this case. *See* Appellants' Consolidated Motion for Reconsideration to Restore Status Quo Ante; to Vacate or in the Alternative Stay Court's February [18], 2020 Order;

_____

Attorney Syme stated it was her understanding that the reports were provided so the court could verify "the meetings took place." *Id.* at 30.

and for Recusal (Motion for Reconsideration), 3/6/20, at 3. However, on March 18, 2020, Appellants filed a notice of appeal.[21] That appeal is now before this panel at 455 WDA 2020.

Meanwhile, on July 7, 2020, Shepard, the new PLG, filed a motion to set compensation. She explained that at the time of her appointment, "no compensation was established for [her] services[, and that she]" is willing to accept the same hourly rate [as was established for Lazarus] or a flat monthly rate as determined by [the] Court in its discretion." Shepard's Motion to Set Compensation for Guardian of the Person, 7/7/20, at ¶¶ 4, 6. On July 17, 2020, the orphans' court entered an order[22] permitting Shepard to charge "$85.00 per hour for her services[, c]osts to be paid equally by David Matesic and Richard Matesic upon Court approval of a Petition for Allowance." Order, 7/17/20. Appellants filed a notice of appeal on August 14, 2020. That appeal is docketed at 870 WDA 2020.[23] As noted *supra*, on November 4, 2020, this

---

[21] Appellants complied with the orphans' court order directing them to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). As per usual, Appellants' Rule 1925(b) statement spans nine pages, and includes 14 allegations of error, with sub-paragraphs. *See* Appellants' Concise Statement of Errors Complained of on Appeal, 4/27/20. Indeed, the orphans' court found that "it [was] difficult to craft a responsive opinion" to Appellants' Rule 1925(b) statement because it was "non-concise, redundant, and at junctures, indecipherable." Orphans' Ct. Op., 5/19/20, at 11.

[22] Although the court entered the order on July 16, 2020, it was not docketed until July 17th.

[23] Appellants likewise subsequently complied with the court's directive to file a Rule 1925(b) statement.

Court granted Appellants' application to consolidate the appeals at 455 WDA 2020 and 870 WDA 2020.

Appellants' amended brief,[24] drafted by Richard, raises the following eight issues on appeal:

> I. Whether the orphans' court's February [18], 2020 order, which granted [David's] request to terminate and replace the incapacitated person's limited guardian of the person, must be reversed or vacated as an abuse of discretion or other error of law because the court did not afford an evidentiary hearing to the incapacitated person, the limited guardian of his person, and his sibling interested parties, all of whom opposed the petition?

> II. Whether the orphans' court's February [18], 2020 order must be reversed or vacated as an abuse of discretion or other error of law in light of the court's election to conduct an ex parte investigation of the case, the evidence from which it refused to disclose to the parties and expose to testing by the adversarial process at any time prior to terminating the appointment of the limited guardian of the person?

> III. Whether the orphans' court's February [18], 2020 order must be reversed or vacated as an abuse of discretion or other error of law given the court's adjudication apparently relied on its own interpretation of a written account furnished by the incapacitated person's psychiatrist, whom the court prohibited [A]ppellants from either cross-examining or deposing, and whose report the court refused to disclose to the parties and expose to testing by the adversarial process at any time prior to terminating the appointment of the limited guardian of the person?

---

[24] After filing their original brief on December 24, 2020, Appellants requested permission to file an amended brief "to address errors and omissions therein (of citation, punctuation, and form) and to improve its readability." Appellants' Application for Relief, 12/28/20. This Court granted the request on January 5, 2021. Order, 1/5/21. Thus, we reference only Appellants' amended brief.

IV. Whether the orphans' court's February [18], 2020 order must be reversed or vacated as an abuse of discretion or other error of law given the court's adjudication apparently relied on its own interpretation of two written accounts furnished by the incapacitated person's guardian of person, which the court refused to disclose to the parties and expose to testing by the adversarial process at any time prior to terminating the appointment of the limited guardian of the person?

V. Whether the orphans' court committed an abuse of discretion by not recusing itself from administration of the case, and should be disqualified from any further administration of the case, based on its multiple abuses of discretion and errors of law?

VI. Whether the [o]rphans' court's July [17], 2020 order, which granted relief to the movant limited guardian of the person, must be reversed or vacated as an abuse of discretion or other error of law given the [c]ourt exceeded the scope of its permissible discretion pending appeal, namely, to maintain the case's status quo pending resolution of the appeal, as set forth at Pa. R.A.P. 1701(b)?

VII. Whether the [o]rphans' court's July [17], 2020 order, which granted relief to the movant limited guardian of the person, must be reversed or vacated as an abuse of discretion or other error of law, given the [c]ourt granted relief without first adjudicating the motion for recusal [A]ppellants had presented four months earlier, on March 6, 2020?

VIII. Whether the [o]rphans' court's July [17], 2020 order, which granted relief to the movant limited guardian of the person, must be reversed or vacated as an abuse of discretion or other error of law given the [c]ourt deprived appellants the opportunity to submit a written response in opposition, and failed to convene a hearing at which [A]ppellants would have the opportunity to rebut evidence advanced in support of the motion?

Appellants' Amended Brief at 5-8 (footnotes omitted).[25]

_____

[25] We note that David contends Appellants have "blatantly violated Pa.R.A.P. 2117," by including in their brief a Statement of the Case that "alone runs over 50 pages of pure argument, irrelevant details and unnecessary vitriol." David's Brief at 1 n.1.  Thus, he maintains "their Statement, if not their entire

**455 WDA 2020**:  Appeal of February 18, 2020, Order

Appellants' first five issues pertain to their appeal from the orphans' court's February 18, 2020, order, replacing Lazarus, as Successor PLG of Robert's person, with Shepard.  When considering a ruling by the orphans' court, we must bear in mind the following:

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support.

> This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony.  In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.  However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts.

*In re Estate of Schultheis*, 747 A.2d 918, 922 (Pa. Super. 2000) (citation omitted).  *See also In re Estate of Rosengarten*, 871 A.2d 1249, 1253 (Pa.

_____

Brief, should be stricken and quashed."  *Id.*  While we decline to strike any portion of the brief, we caution Appellants that we agree their Statement clearly violates Rule 2117, which requires "[a] closely **condensed** chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy," and precludes "any argument."  *See* Pa.R.A.P. 2117(a)(4), (b) (emphasis added).  Rather, Appellants' 52-page statement is a protracted recitation of the entire history of the guardianship proceedings, complete with Appellants' commentary.

Super. 2005) ("The orphans' court's factual findings receive the same deference accorded factual findings of a jury, but we must ensure that the decision of the court is free from legal error."). Furthermore, "[t]he power of the orphans' court to remove a guardian is an inherent right, which will not be disturbed unless there is a gross abuse of discretion." *In re Estate of Border*, 68 A.3d 946, 959 (Pa. Super. 2013).

In their first issue, Appellants contend the orphans' court abused its discretion by removing Lazarus as Robert's Successor PLG without first conducting an evidentiary hearing. *See* Appellants' Amended Brief at 71. Relying on *Estate of Wolongavich*, 489 A.2d 248 (Pa. Super. 1985), Appellants insist a full evidentiary hearing was required because "[w]ithout sworn testimony . . . we are unable to review that which is mere allegation and that which has not been subjected to the test of an evidentiary hearing and judicial determination." Appellants' Amended Brief at 72, *citing Wolongavich*, 489 A.2d at 250. They argue the orphans' court would not allow Appellants to call David on cross-examination and confront him with "a number of exhibits from [Attorney] Caplan's file[.]" Appellants' Amended Brief at 72-73. Thus, they assert the court's "disposition of David's petition violated the rule as stated in *Wolongavich*, and accordingly requires this Court's reversal or vacatur." *Id.* at 73.

While we agree the orphans' court did not take testimony from any witnesses at the February 14, 2020, hearing, we conclude no relief is warranted. First, we note Appellants did not request an evidentiary hearing

in their 19-page response to David's petition for review, nor did they ask the orphans' court, during the February 14th hearing, for the opportunity to present testimony concerning whether the removal of Lazarus was justified.[26]

Second, we conclude the court's ruling was not based on a "mere allegation," untested by cross-examination. *See Wolongavich*, 489 A.2d at 250. Rather, as the orphans' court explained: "On the basis of largely **uncontested** facts, the finding made in this matter was that the appearance of objectivity on Ms. Lazarus' part had been compromised, and that, in view of such circumstances, she would not be able to serve effectively as limited guardian of the person for Robert." Orphans' Ct. Op., 5/19/20, at 9-10 (emphasis added). Indeed, the court's decision was based on Lazarus' time sheet entries, as well as her testimony at prior hearings.

The orphans' court noted that during the contempt hearing, before ever meeting Robert or David, Lazarus testified that she believed David was controlling Robert. Orphans' Ct. Op., 5/19/20, at 5, *citing* N.T., 12/11/19, at

_____

[26] We note that after the court announced its decision, Richard complained they were not given the opportunity to "present the evidence . . . relevant to [the] Court's decision to replace Ms. Lazarus with Ms. Shepard." N.T., 2/14/20, at 39. When the court inquired why their filed response was not sufficient, Richard began referring to the August 29, 2019, hearing, at which point, the court stopped him and stated: "Ms. Shepard was here. We had a hearing. She was vetted, and that's my decision." *Id.* at 40. It merits emphasis that Appellants have not presented any evidence or argument demonstrating Shepard is not qualified to serve as Robert's Successor PLG.

- 24 -

85.    When the court asked her how she would remain objective, Lazarus responded:

> I believe it is important to be objective.  In fact, one of the things that I said to David and said to everyone in this family, both factions, is that I would not meet with anybody until we come to an agreement in court.
>
> And I want to meet with Robert first, so I think it's really important to not be biased.

*Id.* at 85-86.  Nevertheless, as the court opined:

> [I]nconsistent with that stated commitment to objectivity, a substantial portion of Ms. Lazarus' log entries from the time of appointment forward comprised conferences with Richard.  That log indicated that the first order of business following Ms. Lazarus' appointment as guardian was a conference with Richard and that contact thereafter was constant, a pattern not shared with any of Robert's other siblings.  Consultations or conferences with Richard comprised a substantial component of Ms. Lazarus' invoiced costs.

Orphans' Ct. Op., 5/19/20, at 6.  Furthermore, the court noted that during the December 11th contempt hearing, Richard made an "unseemly offer" to Lazarus "to represent her during the scheduling conference, a gesture which lent to a concern that Ms. Lazarus may be biased toward Richard."[27]  *Id.* at 7 n.3.  Thus, the court's decision to remove Lazarus as Successor PLG was based entirely on record evidence.  No further evidentiary hearing was necessary or warranted.  Accordingly, Appellants' first claim fails.

Next, Appellants contend the orphans' court abused its discretion when it "conducted an ex parte investigation of the case, refused [A]ppellants'

_____

[27] The orphans' court mistakenly stated the offer occurred during the November 26th hearing.  *See* Orphans' Ct. Op., 5/19/20, at 7 n.3.

demands for disclosure of the information the court had obtained, and then terminated Ms. Lazarus' appointment in actual or apparent reliance on that same information." Appellants' Amended Brief at 74. Specifically, Appellants complain the three reports in question — two solicited from Lazarus and one from Dr. Goetz — were "never exposed to the adversarial process" to test their "credibility and probative value." *Id.* Consequently, Appellants maintain the orphans' court violated the Code of Judicial Conduct by "conducting [its] own factual investigation" and then failing to disqualify itself after receiving "personal knowledge of facts that are in dispute." *Id.* at 74-75 (citation omitted).

> The term "ex parte" is defined as follows:
>
> On one side only; by or for one party; done for, in behalf of, or on the application of, one party only. A judicial proceeding, order, injunction, etc., is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by any person adversely interested.

*Commonwealth v. McCullough*, 230 A.3d 1146, 1159 n.3 (Pa. Super. 2020) (citation omitted), *appeal denied*, ___ A.3d ___, 246 WAL 2020 (Pa. Feb. 11, 2021). *See also* Black's Law Dictionary (11th ed. 2019) ("ex parte adj. (17c) Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, anyone having an adverse interest . . .").

We agree with David's assessment that none of the reports at issue were obtained via an ex parte investigation. *See* David's Brief at 15. During the November 26, 2019, hearing, the court referenced a letter Lazarus sent to the court, in which she "indicate[d her] inability to meet with Robert." N.T.,

11/26/19, at 18. Indeed, the obstruction Lazarus encountered by David was the basis for Attorney Caplan's petition for contempt, and a topic at both the November 26th and December 11th hearings. In his cross-examination, Richard asked Lazarus if she would be willing to "release a copy of that letter" to the parties, to which Lazarus responded, "I would say that's up to the Judge." *Id.* at 24. When Richard moved for release of the letter, the orphans' court denied his request. *Id.* Thus, it is evident Lazarus' 2019 letter was not a report commissioned by the court for the benefit of one party, but instead, simply a letter sent by Robert's PLG to the court to alert it to the issues she was encountering.

Further, the two other reports Richard seeks were prepared by Lazarus and Dr. Goetz **after** Lazarus' first meeting with Robert in December 2019. Again, the reports were not commissioned by the court for the sole benefit of David's faction. Rather, at the conclusion of the December 11, 2019, hearing — after the parties agreed to schedule Lazarus' first meeting with Robert with Dr. Goetz and Robert's caregiver present — **David's counsel** requested that both Dr. Goetz and Lazarus submit reports to the court **only**. *See* N.T., 12/11/19, at 97. The court responded: "And then it will be the Court's decision to circulate that report to those that are of interest. Does everybody understand those terms and conditions?" *Id.* Richard did not respond or object. *See id.* Concerned that disclosure may violate health care privacy laws, the court later denied Richard's request for release of the reports. *See* N.T., 1/21/20, at 11-15.

- 27 -

Our review reveals no ex parte investigation on the part of the orphans' court. The fact that the court chose not to release certain reports, which the court explained might violated health care privacy laws, to the parties or their counsel does not constitute a violation of the Code of Judicial Conduct. Further, despite Appellants' allegations, there is no indication the orphans' court considered any ex parte communications in its decision to remove Lazarus as Successor PLG. Accordingly, Appellants' second claim fails.

Third, Appellants contend the orphans' court abused its discretion by refusing to permit them to cross-examine Dr. Goetz at the December 11, 2019, contempt hearing, or depose the doctor after he submitted his December 2019 report. *See* Appellants' Amended Brief at 81. They insist:

> Had the doctor's multiple equivocations been exposed at the contempt hearing, a reasonable jurist could not have found his expert testimony credible, and would have had to defer instead to the alternative views of Ms. Lazarus whom, it must be remembered, was a highly experienced professional guardian, one to whom the court had granted exclusive authority to determine Robert's need for evaluation and treatment; to have unrestricted access to Robert at work; and to consent without exception to Robert's heath care, residency, placement and visitation.

*Id.* at 81-82 (footnotes omitted).

Appellants' claim misses the mark. Dr. Goetz's evaluation of Robert — and particularly whether Robert was susceptible to suggestion — had nothing to do with the court's decision to remove Lazarus as Successor PLG. Rather, the orphans' court removed Lazarus because of the **appearance** of bias and impartiality reflected in both the number of times she met with Richard, as opposed to the other siblings, and her comments that she believed David was

controlling Robert, made before she ever met Robert. *See* Orphans' Ct. Op., 5/19/20, at 11 ("[A] review of the record had disclosed costs and delays that were unnecessary and conduct which had compromised the appearance of full focus upon the best interest of the ward and of the impartiality which much be maintained by a guardian and may be essential to effectiveness in that role."). Although the court recognized Lazarus encountered obstacles in her efforts to meet with Robert, it criticized her for failing to seek the "assistance of the Court," but instead, "confer[ring] and consult[ing] extensively with one family member to the exclusion of all others[.]" *Id.* at 11-12. *See also id.* at 7 ("[T]he appropriate response by Ms. Lazarus to any perceived obstinacy on David's part was to seek the assistance of the Court, not to align with a sibling opposed to David."). Thus, Dr. Goetz's assessment of Robert, and particularly his susceptibility to suggestion by those close to him, was not a relevant factor in the court's decision to remove Lazarus as Successor PLG. In fact, the orphans' court's comments reflect that it **did believe** David was obstructing Lazarus' access to Robert. *See* N.T., 12/11/19, at 68-81 (orphans' court questioning of David at contempt hearing). The court's ultimate decision to remove Lazarus was based on her appearance of bias. Accordingly, Appellants' third claim warrants no relief.

In their fourth claim, Appellants "incorporate" their prior arguments, and assert the orphans' court abused its discretion by relying on "its own interpretation of two written accounts furnished by Ms. Lazarus, which the court refused to disclose to [A]ppellants[.]" Appellants' Amended Brief at 86.

In this one-page argument, Appellants insist the orphans' court's removed Lazarus because she disagreed with Dr. Goetz's recommendation, "namely, that she either be introduced to Robert in David's presence, or not at all." *Id.* They maintain that if they had the opportunity to review her reports, "they could have further developed the basis for her disagreement with Dr. Goetz." *Id.*

Again, Appellants' argument focuses on matters irrelevant to the orphans' court's ruling. As explained above, the orphans' court removed Lazarus because of her appearance of bias in favor of Richard's faction — not because she disagreed with Dr. Goetz's recommendation. Indeed, had Lazarus simply requested court assistance in setting up the initial meeting sooner, or refused to conference with Richard to the exclusion of Robert's other family members, the court may have ruled differently. Thus, this claim too fails.

In their last challenge to the February 18, 2020, order, Appellants contend the orphans' court abused its discretion by failing to recuse itself from the case. *See* Appellants' Amended Brief at 87. They maintain the court "[c]onsistently . . . failed to administer and adjudicate the case in a fair and impartial manner." *Id.* In support of their allegation, Appellants emphasize, *inter alia*: (1) the court's ex parte solicitation of three confidential reports; (2) the court's repeated badgering and interrupting of Appellants' counsel during court appearances, including "scream[ing] at . . . counsel" in court; and (3) the court's decision to preclude Appellants' counsel from participating

in the December 11th conference. *See id.* at 88-89. In contrast, Appellants argue, the orphans' court "conducted [itself] with marked courtesy and decorum during the appearance of witnesses called by David[.]" *Id.* at 90.

"An appellate court presumes judges are fair and competent, and reviews the denial of a recusal motion for an abuse of discretion." *In re Lokuta*, 11 A.3d 427, 435 (Pa. 2011). However,

> the law is clear. In this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived.

*Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017). In *Reilly by Reilly v. Se. Pennsylvania Transp. Auth.*, 489 A.2d 1291 (Pa. 1985), the Pennsylvania Supreme Court explained:

> When circumstances arise during the course of a trial raising questions of a trial judge's bias or impartiality, it is still the duty of the party, who asserts that a judge should be disqualified, to allege by petition the bias, prejudice or unfairness necessitating recusal. A failure to produce a sufficient plea will result in a denial of the recusal motion.
>
> \*   \*   \*
>
> Once the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result. In order to preserve an issue for appeal, [a party has] to make a timely, specific objection at trial **and** raise the issue on post-trial motions. It [is] not enough to raise new grounds for the first time in post-trial proceedings.

*Id.* at 1299, 1300.

In the present case, Appellants did not seek the recusal of the orphans' court judge at any time before the court entered its February 18, 2020, order. Rather, they moved for recusal in a motion for reconsideration filed on March 6, 2020.[28] However, before the court could rule on the motion, Appellants filed a notice of appeal on March 18th. Appellants fail to explain why they did not seek recusal of the orphans' court until **after** the court entered its adverse ruling.

Appellants' delay is particularly notable because, as they assert in their reply brief, the court's "behavior at the **August 29, 2019** hearing was plainly abusive and warranted recusal." Appellants' Amended Reply Brief at 44 (emphasis added). They contend, however, they were faced with the unenviable decision to either move for the court's recusal in open court or wait "in hopes that the judge . . . would ultimately choose Lazarus" as Robert's Successor PLG, a "strategy" they now agree "paid off." *Id.* at 45. Nevertheless, while Appellants complain of the court's purported bias in proceedings prior to the February 14th hearing, they did not seek recusal of the orphans' court until **after** the court's adverse decision removing their handpicked guardian. Thus, we conclude their motion was untimely filed. *See Lomas*, 170 A.3d at 390 ("[A] party must seek recusal of a jurist at the

---

[28] Orphans' Court Rule 8.2(a) permits the filing of a motion for reconsideration of any final orphans' court order. *See* Pa.O.C.R. 8.2(a).

earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse.").

Accordingly, we conclude none of Appellants' challenges to the court's February 18, 2020, order, warrant relief.

**870 WDA 2020**:  Appeal of July 17, 2020 Order

Appellants' last four issues pertain to their appeal from the orphans' court's July 17, 2020, order, directing that Shepard "be permitted to charge $85.00 per hour for her services" as Robert's Successor PLG.[29]   Order, 7/17/20.   However, before we may consider Appellants' challenge to the court's ruling, we must first determine if the order is appealable.[30]   **See Adams v. Erie Ins. Co.**, 238 A.3d 428, 431 (Pa. Super. 2020) ("The appealability of an order directly implicates the jurisdiction of the court asked to review the order.") (citation omitted), *appeal denied*, 244 A.3d 812 (Pa. 2021).

---

[29] The order also provided that the cost was to be paid equally by Richard and David, "upon Court approval of a Petition For Allowance," and that "[f]amily members shall abide by the directives of the Limited Guardian of the Person as determined by the Limited Guardian . . . to be in the best interests of" Robert.  Order, 7/17/20.

[30] On September 25, 2020, this Court directed Appellants to show cause why the July 17, 2020, order is appealable.  Order, 9/25/20.  After receiving Appellants' timely response, this Court discharged the rule to show cause on October 29, 2020.

Pursuant to the Pennsylvania Rules of Appellate Procedure, an appeal lies from:

> (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

*In re Estate of Moskowitz*, 115 A.3d 372, 388–89 (Pa. Super. 2015) (citation omitted).  Further, Rule 342 lists certain orders "unique to Orphans' Court practice, [which] closely resemble final orders as defined in Rule 341(b)," so that an appeal from those orders may be taken as of right.  *See* Pa.R.A.P. 342, Note.

Here, there is no dispute that the orphans' court's July 17th order is not a final order pursuant to Pa.R.A.P. 341(b)(1) — it does not "dispose[ ] of all claims and of all parties."  *See* Pa.R.A.P. 341(b)(1).  Moreover, the orphans' court did not expressly determine that "an immediate appeal would facilitate resolution of the entire case," pursuant to Rule 341(b)(3) and (c), nor did Appellants seek permission from this Court to appeal an interlocutory order, pursuant to Pa.R.A.P. 1311(b).

Rather, Appellants contend the order is appealable pursuant to Pa.R.A.P. 311(a)(8), which permits an appeal from "[a]n order that is made final and appealable by statute or general rule, even though the order does not dispose of all claims and of all parties."  *See* Pa.R.A.P. 311(a)(8).  Indeed, Appellants insist the court's July 17th order was an order entered pursuant to the

Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541.[31] They reason that, because the order determined Shepard's **status** as a creditor and imposed a "**new duty** upon the parties" to pay her fees, the order fell within "the rule stated in ***Nationwide Mut. Ins. Co. v. Wickett***, 763 A.2d 813, 817 (Pa. 2000), [that] an order that affirmatively declares the duties, rights, or status of a party cannot be interlocutory." Appellants' Amended Brief at 101-02.

We disagree. First, Appellants misinterpreted the rule in ***Wickett***. In that case, the Supreme Court explained: "Section 7532 simply states that an order **in a declaratory judgment action** that either affirmatively or negatively declares the rights and duties of the parties constitutes a final order." ***Wickett***, 763 A.2d at 818 (emphasis added). In omitting the critical modifier — "in a declaratory judgment action" — Appellants attempt to expand the holding beyond the court's intention. Indeed, one could argue that any order conceivably declares rights or duties of parties.

Moreover, Appellants fail to acknowledge that the Supreme Court subsequently modified its holding in ***Wickett***, and formulated a two-part test

---

[31] Section 7532 provides:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S. § 7532.

for an appellate court to consider when determining "whether an order declaring the rights of parties is final and appealable: (1) what is the effect of the lower court's decision on the scope of the litigation; and (2) what practical effect does the court's decision have on the ultimate outcome of the case." ***Pennsylvania Manufacturers' Ass'n Ins. Co. v. Johnson Matthey, Inc.***, 188 A.3d 396, 399 (Pa. 2018) (citation omitted). The Supreme Court summarized: "If the order in question merely narrows the scope of the litigation and does not resolve the entirety of the parties' eligibility for declaratory relief, then the order is interlocutory and not immediately appealable." ***Id.*** at 400. Here, even if we were to conclude an order entered **outside** a declaratory judgment action could qualify as an order entered pursuant to Section 7532, the Court's July 17th order did **not** resolve the parties' eligibility for declaratory relief. Thus, it is not appealable pursuant to Rule 311(a)(8).

In both their answer to this Court's show cause order and their amended reply brief, Appellants also assert the order is appealable pursuant to Pa.R.A.P. 342(a)(5), which permits an appeal from an orphans' court order "determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship[.]"[32] ***See*** Pa.R.A.P. 342(a)(5). ***See*** Appellants' Response to

---

[32] We note that we could consider this argument waived because Appellants failed to raise it in their principal brief. This Court has explained:

> Rule of Appellate Procedure 2113 states that an "appellant may file a brief in reply to matters raised by appellee's brief not

September 25, 2020 Rule to Show Cause Order, 1/13/20, at 7-8; Appellants' Amended Reply Brief at 61-62. Appellants insist the July 17th order "determined Shepard's **status** as both fiduciary and creditor" because, during the August 29, 2019, hearing, she testified that if appointed as Robert's PLG, "she would not charge for her work."[33] Appellants' Amended Reply Brief at 61-62 (emphasis added).

We conclude Appellants interpret Rule 342(a)(5) too broadly. The Note to Rule 342 provides, in relevant part:

> Subdivision (a)(5) is intended to clarify prior Rule 342 in several respects: First, an appealable Orphans' Court order concerning the status of individuals or entities **means an order determining if an individual or entity is a fiduciary, beneficiary or creditor, such as an order determining if the alleged**

> previously raised in appellant's brief." An appellant is prohibited from using their reply brief as a vehicle to argue issues raised by inadequately developed in their original brief.

***Fulano v. Fanjul Corp.***, 236 A.3d 1, 15 n.15 (Pa. Super. 2020) (citations omitted).

[33] Appellants have misconstrued Shepard's testimony. During her direct testimony, Shepard indicated that she was initially contacted by Richard, regarding his mother, at which time she met Robert. N.T., 8/29/19, at 29-30. She further testified that she was never retained by Richard, David, or any of Robert's siblings, and had not received any money for her "involvement thus far in Robert's life." ***Id.*** at 30-31. David's counsel then asked Shepard: "Going forward, are you interested in compensation from any . . . party dealing with Robert." ***Id.*** at 31. Shepard responded: "I am not. Although Mr. Caplan said that . . . it is reasonable and allowable, . . . but I have clients much to my husband's chagrin that I don't necessarily charge for." ***Id.*** Contrary to Appellants' characterization, we do not construe Shepard's brief testimony on the subject of fees to be a definitive statement that she did not intend to charge for her services if appointed as PLG.

**creditor has a valid claim against the estate**.  Second, such orders include orders pertaining to trusts and guardianships as well as estates.  Finally, this subdivision resolves a conflict in prior appellate court decisions by stating definitively that an order removing or refusing to remove a fiduciary is an immediately appealable order.

Pa.R.A.P. 342, Note (emphasis added).  Thus, the Rule was intended to apply to orders such as the February 18, 2020, order on appeal, removing a PLG and naming a successor.  It does not make final an order determining the fee a PLG may charge for her services.  ***See In re Miscin***, 885 A.2d 558, 562 (Pa. Super. 2005) (holding orphans' court order not appealable under prior Rule 342; "[t]he court did not dispose of Appellant's claim by denying appointment of a permanent plenary guardian[, but] merely refused to consider the petition on its merits while" incapacitated person was involuntarily committed).  Accordingly, we quash the appeal from the July 17, 2020, order at Docket No. 870 WDA 2020.[34]

---

[34] We also disagree with Appellants' contention that the July 17th order "exceeded the scope of [the orphans' court's] permissible discretion pending appeal" pursuant to Pa.R.A.P. 1701(b).  ***See*** Appellants' Amended Brief at 97.  Rule 1701 states that, "after an appeal is taken[,] the trial court . . . may no longer proceed further in the matter."  Pa.R.A.P. 1701(a).  However, the rule provides several exceptions, including permitting the trial court to "[t]ake such action as may be necessary to preserve the status quo."  Pa.R.A.P. 1701(b)(1).  We agree with Shepard that the July 17th order "simply preserv[ed] the *status quo*" by compensating Shepard at the same rate as Lazarus.  ***See*** Shepard's Brief at 8.  As the orphans' court explained in its opinion:  "The [July 17th] Order merely recited the standard of conduct expected of family members and preserved the hourly rate previously found to be warranted by the complexity of family circumstances and the considerable demands made upon the time of the limited guardian of the person."  Orphans' Ct. Op., 10/15/20, at 5-6.  Thus, we do not agree with

In summary, at Docket No. 455 WDA 2020, we affirm the order entered February 18, 2020, removing Lazarus as Robert's Successor PLG and replacing her with Shepard.  At Docket No. 870 WDA 2020, we quash the appeal from the order entered July 17, 2020.

Order at Docket No. 455 WDA 2020 affirmed.  Appeal at Docket No. 870 WDA 2020 quashed.  Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date:  06/21/2021

---

Appellants' assertion that the July 17th order "materially modified the terms of the February 14, 2020 order." **See** Appellants' Amended Brief at 101.